BATOUL ATASSI, Plaintiff-Appellant v. INAD ATASSI, Defendant-Appellee

No. 9312DC1221

(Filed 3 January 1995)

**Divorce and Separation § 560 (NCI4th); Domicil and Residence § 8 (NCI4th)— genuine issue of fact as to domicile—recognition of Syrian divorce by North Carolina courts—summary judgment improper**

The trial court erred by granting partial summary judgment for defendant and dismissing plaintiff's claims for alimony and equitable distribution where there was a genuine issue of material fact as to whether defendant's domicile was North Carolina or Syria and therefore whether defendant's Syrian divorce should be given recognition by the courts of this state so as to bar plaintiff's claims.

**Am Jur 2d, Divorce and Separation §§ 1104 et seq.; Domicil §§ 48 et seq.**

**Domestic recognition of divorce decree obtained in foreign country and attacked for lack of domicil or jurisdiction of parties. 13 ALR3d 1419.**

Appeal by plaintiff from order entered 30 September 1993 by Judge Andrew R. Dempster in Cumberland County District Court. Heard in the Court of Appeals 12 September 1994.

Plaintiff wife, Batoul Atassi, filed a verified complaint in Cumberland County District Court against defendant husband, Dr. Inad Atassi, for alimony, alimony *pendente lite*, child custody and support, relief from domestic violence, and equitable distribution. Without filing an answer, defendant moved, pursuant to G.S. § 1A-1, Rule 12(b)(1), to dismiss the action for lack of subject matter jurisdiction. Subsequently, defendant moved, pursuant to G.S. § 1A-1, Rule 56, for

ATASSI v. ATASSI

[117 N.C. App. 506 (1995)]

partial summary judgment dismissing all claims except child custody and support. The evidentiary materials before the court, consisting of the complaint, affidavits and the deposition of defendant, tend to show the following:

Defendant was born in Syria and maintains his Syrian citizenship. He is also a naturalized citizen of the United States, having become a citizen in 1984. Defendant is 47 years old and has been practicing neurosurgery in Fayetteville for the last thirteen years. For over twenty years, defendant has continuously resided in the United States, first completing his post-graduate medical training at various American hospitals and then beginning his practice in Fayetteville.

In December of 1990, defendant returned to Syria, where he arranged a meeting with, and later marriage to, plaintiff. Immediately following their February 1991 marriage in Syria, defendant returned to Fayetteville with his new wife, and another marriage ceremony was performed there on 26 March 1991 for the purpose of facilitating plaintiff's application for permanent residence. They have resided in Fayetteville since that time.

Prior to their marriage in Syria, plaintiff and defendant entered into a marriage contract pursuant to Syrian law, signed by defendant and by plaintiff's father. By the terms of that agreement, according to defendant, plaintiff became entitled to a dowry of 300,000 Syrian pounds upon marriage, and an additional 700,000 Syrian pounds in the event of divorce. Defendant also presented plaintiff with a premarital agreement in English on the day before their Syrian wedding. Plaintiff claims that she and her father refused to sign it on the advice of a Syrian attorney; defendant claims that plaintiff signed the document in Syria, though not before a notary.

According to plaintiff's affidavit, defendant began to pressure her to sign the premarital agreement shortly after his return to Fayetteville. Defendant allegedly threatened to return to Syria and divorce plaintiff, and then have her deported from the United States. Plaintiff capitulated and signed the agreement on 16 March 1991. On 18 March 1991, defendant took plaintiff to the offices of his attorney, where she was asked to acknowledge her signature on the agreement. At that time, plaintiff acknowledged her signature on the premarital agreement. She contends, however, that she was never asked by the notary when she had signed the document or whether she did so of her own accord.

ATASSI v. ATASSI

[117 N.C. App. 506 (1995)]

Plaintiff and defendant had a son, Azmi, eleven months after their marriage. The marriage, however, does not appear from the record to have been a happy one, and at the end of October, 1992, defendant took the couple's nine-month old son and went to Atlanta in preparation for a return trip to Syria. Defendant called plaintiff from Atlanta and told her that she would have to return to Syria with him if she wished to see her son again. Plaintiff accompanied defendant and their son to Syria, where defendant told her to remain with her parents. They stayed in Syria approximately two weeks, after which time defendant returned to Fayetteville alone.

Upon his return, defendant obtained, through his attorney in Syria, a revocable divorce from plaintiff. The Syrian divorce was obtained, according to plaintiff, without her knowledge or consent, and she received no notice and made no appearance at any proceeding. She and her family in Syria received notice, after the fact, that defendant had divorced plaintiff on 25 November 1992, while he was in the United States. A few days later, defendant called plaintiff and her family to apologize. Defendant informed plaintiff that he had revoked the Syrian divorce and requested that she return to Fayetteville. Plaintiff did so and resumed the marital relationship in December of 1992.

For the next three months, defendant and plaintiff lived, travelled, and generally held themselves out as husband and wife, including a visit by plaintiff's father and a family trip to Washington, D.C. On 23 March 1993, defendant removed his wedding ring, threw it at plaintiff, and began a course of indignities directed at making plaintiff miserable enough to leave and return to Syria. Plaintiff filed the present action for relief on 4 June 1993.

The trial court granted defendant's motion for summary judgment on plaintiff's claims for alimony, alimony *pendente lite*, and equitable distribution. Plaintiff appeals. The remaining issues of child custody and support have proceeded separately in the court, and are not involved in this appeal.

*Blackwell, Luedeke, Hicks & Burns, P.A., by John V. Blackwell, Jr., and The McLeod Law Firm, P.A., by Joe McLeod, for plaintiff-appellant.*

*Harris, Mitchell & Hancox, by Ronnie M. Mitchell, and Beaver, Holt, Richardson, Sternlicht, Burge & Glazier, P.A., by F. Thomas Holt, III, for defendant-appellee.*

MARTIN, Judge.

Plaintiff's primary contention on appeal is that the trial court erred by granting partial summary judgment for defendant and dismissing her claims for alimony and equitable distribution. We agree with plaintiff, reverse the order, and remand the case to the district court for trial on those claims.

Although denominated partial summary judgment, the trial court's order finally determined plaintiff's claims for alimony and equitable distribution. G.S. § 1-277 provides that an appeal may be taken from an order or judgment of a superior or district court which affects a substantial right or "which constitutes a *final adjudication,* even when that determination disposes of only a part of the lawsuit." *Oestreicher v. Stores,* 290 N.C. 118, 124, 225 S.E.2d 797, 802 (1976). (Emphasis original.) Here, since the court's order constituted a final judgment as to alimony and equitable distribution, the order is immediately appealable. *Truesdale v. Truesdale,* 89 N.C. App. 445, 366 S.E.2d 512 (1988).

Plaintiff argues the trial court erred in granting defendant partial summary judgment. A trial court may grant a motion for summary judgment only when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. *Canady v. McLeod,* 116 N.C. App. 82, 446 S.E.2d 879 (1994). In ruling on a summary judgment motion, the trial court must construe all evidence in the light most favorable to the non-moving party, allowing the non-moving party a trial upon the slightest doubt as to the facts. *Id.*

Though the trial judge did not specify the basis for its ruling, both parties argue the effect of the Syrian divorce allegedly obtained by defendant. Plaintiff contends the Syrian divorce should not be recognized and, therefore, should not act as a bar to plaintiff's claims for alimony and equitable distribution. Conversely, defendant argues that the Syrian decree cuts off plaintiff's right to maintain an action for alimony or equitable distribution. We agree with plaintiff that she has raised genuine issues of material fact as to whether the Syrian divorce bars her rights under North Carolina law, and thus, the foreign decree cannot serve as the basis for the trial court's order of partial summary judgment.

Under the United States Constitution, North Carolina is required by Article IV, Section 1, the "full faith and credit clause", to recognize divorce judgments from sister-states. *See Williams v. North Carolina*

### ATASSI v. ATASSI

*(Williams I)*, 317 U.S. 287, 87 L.Ed. 279 (1942). However, this recognition is not absolute, and may be withheld from a sister-state divorce decree when there is an insufficient jurisdictional basis for granting the divorce. *See Williams v. North Carolina (Williams II)*, 325 U.S. 226, 89 L.Ed. 1577 (1945).

For divorces emanating from foreign countries, the full faith and credit clause has no application whatsoever. In *Mayer v. Mayer*, 66 N.C. App. 522, 311 S.E.2d 659, *disc. review denied*, 311 N.C. 760, 321 S.E.2d 140 (1984), this State's seminal case on the subject of recognition of divorces obtained in foreign countries, this Court noted:

> Recognition of foreign decrees by a State of the Union is governed by principles of comity. Consequently, based on notions of sovereignty, comity can be applied without regard to a foreign country's jurisdictional basis for entering a judgment. More often than not, however, "many of the American states are likely to refuse recognition [to deny comity] to a divorce decree of a foreign country not founded on a sufficient jurisdictional basis." That is, "a foreign divorce decree will be recognized, if at all, not by reason of any obligation to recognize it, but upon considerations of utility and mutual convenience of nations. Recognition may be withheld in various circumstances, as where the jurisdiction or public policy of the forum has been evaded in obtaining the divorce." Since the power of a State of the Union to grant a divorce decree is dependent upon the existence of a sufficient jurisdictional basis—domicile or such a relationship between the parties [and] the State as would make it reasonable for the State to dissolve the marriage—it follows that the validity of a foreign divorce decree should depend upon an adequate jurisdictional basis.

*Id.* at 527-28, 311 S.E.2d at 663-64. (Citations omitted.) *See Note, "Domestic Relations—The Validity of Foreign Divorce Decrees in North Carolina:* Mayer v. Mayer," 20 Wake Forest L.R. 765 (1984); *"Divorce Law Around the World,"* 9 Family Advocate 4 (Spring 1987); 1 R. Lee, *North Carolina Family Law* § 104 (4th ed. 1979); *Restatement (Second) of Conflict of Laws* §§ 11-21, 70-74, & 98 (1971); Peter N. Swisher, *"Foreign Migratory Divorces: A Reappraisal,"* 21 J. Fam. L. 9 (1982-83).

In order to determine whether North Carolina will afford recognition to the Syrian divorce in this case, there must be a consideration of any jurisdictional questions which may exist. Jurisdiction in

divorce proceedings stems from the concept of domicile. "Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil." *Williams II*, 325 U.S. at 229, 89 L.Ed. at 1581. "Domicile denotes one's permanent, established home as distinguished from a temporary, although actual, place of residence . . . . It is the place where he intends to remain permanently, or for an indefinite length of time." *Farnsworth v. Jones*, 114 N.C. App. 182, 186, 441 S.E.2d 597, 600 (1994), quoting *Hall v. Wake County Bd. of Elections*, 280 N.C. 600, 187 S.E.2d 52 (1972). Although a person may have more than one residence, he can only have one domicile. *Davis v. Maryland Casualty Co.*, 76 N.C. App. 102, 331 S.E.2d 744 (1985). Domicile is a question of fact to be determined by the finder of fact. *Burke v. Harrington*, 35 N.C. App. 558, 241 S.E.2d 715 (1978).

In his affidavit, defendant maintains that his domicile is in Syria. As a Syrian domiciliary, defendant might likely expect North Carolina to recognize his Syrian divorce from plaintiff, since the jurisdictional requirement for comity would be met. However, the evidence before us raises a genuine issue of material fact as to whether defendant has changed his domicile to North Carolina.

In *Farnsworth, supra*, this Court discussed the determination of domicile when there is a dispute as to a change in domicile.

> Once an individual acquires a domicile, it is presumed to continue until a new domicile is established. "The burden of proof rests upon the person who alleges a change." We apply a three-part test to differentiate between a residence and a domicile. To establish a change of domicile, a person must show: (1) an actual abandonment of the first domicile, coupled with an intention not to return to it; (2) the acquisition of new domicile by actual residence at another place; and (3) the intent of making the newer residence a permanent home . . . . We must consider the evidence of all the surrounding circumstances and the conduct of the person in determining whether he or she has effectuated a change in domicile.

*Id.* at 187, 441 S.E.2d at 600-01. (Citations omitted.) "A person's testimony regarding his intention with respect to acquiring a new domicile or retaining his old one is competent evidence, but it is not conclusive of the question. All of the surrounding circumstances and the conduct of the person must be taken into consideration." *Burke*, at 560, 241 S.E.2d at 717. (Citations omitted.)

ATASSI v. ATASSI

[117 N.C. App. 506 (1995)]

After reviewing the surrounding circumstances and conduct of defendant as shown by the evidentiary materials before the court, we conclude there exists a genuine issue as to defendant's domicile, which is a material fact, and that summary judgment should not have been granted. Circumstances which would support a finding that defendant intended to abandon his original domicile of Syria and establish his new domicile in North Carolina are: (a) his consistent, actual residence in North Carolina for over thirteen years; (b) his former status as a permanent resident alien, and his more recent naturalization as an American citizen; (c) the location of his medical practice and all other sources of income, i.e. investments and real estate holdings in the United States; (d) his admissions in deposition and his stated intentions for the couple in the premarital agreement, to wit "we have agreed to marry and intend to reside together in North Carolina as husband and wife;" (e) his attempt to fashion a premarital agreement specifically in compliance with North Carolina General Statutes Chapter 52B; (f) his bringing his wife from Syria to live with him in this country; and (g) his general lifestyle and actions which, while demonstrating some connection to Syria, indicate that defendant intends to remain in North Carolina permanently or indefinitely.

Should the fact-finder conclude defendant has changed his domicile, it is clear that the Syrian divorce should not be given recognition by the courts of this State so as to bar plaintiff's claims. Our courts will not permit defendant, as an American citizen domiciled in North Carolina, to use his former status and relationship with Syria to evade the laws of North Carolina governing domestic relations. North Carolina's interest in the marriage would prevail over any foreign divorce. "Where one's domicile is, there will his marital status be also. The marriage relationship is interwoven with public policy to such an extent that it is dissolvable only by the law of the domicile." 1 R. Lee, *North Carolina Family Law* § 42, at 238 (4th ed. 1979). Our decision in *Mayer* noted that the "great weight of authority in this country is that divorces granted in foreign countries to persons who are domiciliaries of the United States are not valid and enforceable." *Mayer* at 529, 311 S.E.2d at 664.

Defendant also argues that North Carolina is bound by a national public policy to recognize the divorce under the Hague Convention on the Recognition of Divorces and Legal Separations. We find this argument specious in that the United States is not a signatory to this convention, and it does not have the force of law in this country. "*Divorce*

**ATASSI v. ATASSI**

[117 N.C. App. 506 (1995)]

*Law Around the World,"* 9 FAMILY ADVOCATE at 12; *Treaties in Force* (1 January 1994). There is no national policy concerning the recognition of foreign country divorces, which is demonstrated by the fact that a majority of states do not recognize them, while a minority do so, including New York, Connecticut, Tennessee, and Florida. *See Rosentiel v. Rosentiel,* 16 N.Y.2d 64, 209 N.E.2d 709 (1965); *"Divorce Law Around the World,"* 9 FAMILY ADVOCATE 4 (Spring 1987).

As an alternate basis for summary judgment, defendant argues that plaintiff's rights to alimony and equitable distribution are barred by (1) the Syrian marriage contract and (2) the North Carolina premarital agreement. We disagree. The Syrian contract cannot be viewed as a premarital agreement limiting plaintiff's relief under the laws of North Carolina. The contract, signed by plaintiff's father as her agent, does not meet the requirements of Chapter 52B of the North Carolina General Statutes, the Uniform Premarital Agreement Act. Moreover, genuine issues of material fact exist as to the validity of the North Carolina premarital agreement. Taken in the light most favorable to plaintiff, the materials before the trial court disclose factual issues which, pursuant to G.S. § 52B-7, would preclude enforcement of the agreement. These issues arise upon plaintiff's testimony that the agreement was signed under duress after the marriage date, as well as her contention that the agreement is unconscionable and that she could not reasonably have had adequate knowledge of defendant's property or financial obligations.

For these reasons, the trial court's order granting defendant's motion for summary judgment is reversed and this case is remanded to the district court for trial on plaintiff's claims for relief.

Reversed and remanded.

Chief Judge ARNOLD and Judge THOMPSON concur.

(Judge Thompson concurred prior to 30 December 1994.)