JO ANN OUTLAW KORNEGAY, Plaintiff v. BONNIE R. ROBINSON, Administratrix of the Estate of Byard G. Kornegay, JIMMY B. KORNEGAY, BYARD G. KORNEGAY, JR., GERALD CLAY KORNEGAY, RICKY THOMAS KORNEGAY, LINDA KAY K. LANE, and MARY HAZEL K. MANUEL, Defendants

No. COA05-131

(Filed 21 February 2006)

**1. Husband and Wife— invalidation of prenuptial agreement—unconscionability**

The trial court did not err by granting summary judgment in favor of defendant in plaintiff wife's declaratory judgment action against decedent's estate seeking to invalidate a prenuptial agreement on the basis that the agreement was void under N.C.G.S. § 52B-7(a)(2) as unconscionable, because: (1) such an agreement between individuals with prior marriages and offspring from those unions, recognizing that both parties had children from previous marriages and possessed separate property obtained through inheritance and other means, is not so oppressive that no reasonable person would make such terms on the one hand, and no honest and fair person would accept them on the other; and (2) as a matter of law, the terms of the agreement are not substantively unconscionable.

**2. Husband and Wife— invalidation of prenuptial agreement—voluntariness—full disclosure**

The trial court erred by granting summary judgment in favor of defendant in plaintiff wife's declaratory judgment action against decedent's estate seeking to invalidate a prenuptial agree-

ment based on the fact that the agreement was void under N.C.G.S. § 52B-7(a)(1) as not voluntary, because taken in the light most favorable to plaintiff, material issues of fact exist as to whether the execution of the agreement was voluntary including: (1) plaintiff, who possessed only a high school education, was presented at the office of decedent's attorney with a premarital agreement which waived all spousal rights, including all rights to decedent's estate, while en route to the wedding; and (2) plaintiff averred that she understood the document to apply in the event of divorce, that the agreement was not explained to her, that she signed the document within ten minutes of its presentation without reading it, that decedent did not disclose his full assets and plaintiff was not aware of the extent of his holdings at the time she signed the agreement, and that she was not represented by independent legal counsel.

Judge TYSON concurring in part and dissenting in part.

Appeal by plaintiff from an order entered 25 October 2004 by Judge Thomas D. Haigwood in Duplin County Superior Court. Heard in the Court of Appeals 14 September 2005.

*Warren, Kerr, Walston, Taylor & Smith, LLP, by John Turner Walston and Henry C. Smith, for plaintiff-appellant.*

*J. Garrett Ludlum for defendant-appellee Bonnie R. Robinson, Administratrix of the Estate of Byard G. Kornegay.*

*Harris, Creech, Ward and Blackerby, P.A., by Thomas M. Ward and Charles E. Simpson, Jr., for defendant-appellees Byard G. Kornegay, Jr., Gerald Clay Kornegay, and Linda Kay K. Lane.*

*Burrows & Hall, by Richard L. Burrows; J. Gates Harris for defendant-appellees Ricky Thomas Kornegay and Mary Hazel K. Manuel.*

*Turner Law Offices, by W. Carroll Turner, for defendant-appellee Jimmy B. Kornegay.*

HUNTER, Judge.

Jo Ann Outlaw Kornegay ("plaintiff") appeals from an order of summary judgment entered 25 October 2004. For the reasons stated herein, we reverse the trial court's order of summary judgment.

**KORNEGAY v. ROBINSON**

[176 N.C. App. 19 (2006)]

Plaintiff presented evidence tending to show that after a four-year relationship, Byard Kornegay ("decedent") asked plaintiff to marry him in early October 1990. Plaintiff, who had a high school education, was a yarn inspector in a textile mill. At the time of the marriage, plaintiff had a net worth of approximately $50,000.00. Decedent was a farmer and businessman with extensive real estate holdings and a net worth in excess of $500,000.00 at the time of the marriage. Both plaintiff and decedent had children from previous marriages.

Plaintiff moved into decedent's home in early October 1990. On 11 October 1990, plaintiff and decedent traveled to South Carolina to obtain a marriage license. After moving into decedent's home, and before obtaining the marriage license, plaintiff learned that decedent wished for her to sign a prenuptial agreement. On 12 October 1990, plaintiff and decedent went to the offices of decedent's attorney, Robert T. Rice ("Rice"). Rice presented plaintiff with the prenuptial agreement. Plaintiff, in her affidavit, stated that the contents of the agreement were not reviewed or explained to her, and that she was not given the opportunity to review the agreement with her own attorney. Plaintiff did not read or request substantive changes to the document, and relied upon her understanding that the prenuptial agreement would only apply in the event of a divorce. Plaintiff signed the prenuptial agreement after approximately ten minutes, and plaintiff and decedent left Rice's office and were married in South Carolina that same day.

On 16 May 2004, decedent passed away. Plaintiff believed that decedent had executed a will with substantial provisions in her favor in 1991; however a will executed 1 March 1991 made no provisions for plaintiff. The prenuptial agreement signed by plaintiff 12 October 1990 included a provision waiving all plaintiff's rights as a spouse, including the right to claim a spousal share of decedent's estate.

Plaintiff brought an action for a declaratory judgment against decedent's estate to invalidate the prenuptial agreement on 9 July 2004. The trial court entered an order of summary judgment dismissing plaintiff's action. Plaintiff appeals.

Plaintiff contends that the trial court erred in granting summary judgment enforcing the prenuptial agreement, as there were material issues of fact as to whether the agreement was executed voluntarily, and as to whether the agreement was unconscionable. Although we do not find the agreement to be unconscionable, we find, when taken

in the light most favorable to plaintiff, that material issues of fact exist as to the voluntariness of the agreement.

We first note the appropriate standard of review. Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). "All such evidence must be considered in the light most favorable to the non-moving party." *In re Will of Priddy*, 171 N.C. App. 395, 396-97, 614 S.E.2d 454, 456 (2005). "If findings of fact are necessary to resolve an issue of material fact, summary judgment is improper." *Prior v. Pruett*, 143 N.C. App. 612, 617, 550 S.E.2d 166, 170 (2001).

I

The Uniform Premarital Agreement Act, N.C. Gen. Stat. § 52B-7 (2005), specifically governs the enforcement of premarital agreements in North Carolina. The statute provides that a premarital agreement is unenforceable if the party against whom enforcement is sought proves one of two circumstances. The statute states:

(a) A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:

(1) That party did not execute the agreement voluntarily; or

(2) The agreement was unconscionable when it was executed and, before execution of the agreement, that party:

a. Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

b. Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

c. Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

*Id.*

[1] Plaintiff first contends that the agreement was void under section 52B-7(a)(2), as the agreement was unconscionable. We disagree.

KORNEGAY v. ROBINSON

[176 N.C. App. 19 (2006)]

In *King v. King*, 114 N.C. App. 454, 442 S.E.2d 154 (1994), this Court stated, "[a] conclusion that the contract is unconscionable requires a determination that the agreement is both substantively and procedurally unconscionable." *Id.* at 458, 442 S.E.2d at 157. " 'Substantive unconscionability . . . involves the harsh, oppressive, and "one-sided terms of a contract," ' i.e., inequality of the bargain." *Id.* (citation omitted). "The inequality of the bargain, however, must be 'so manifest as to shock the judgment of a person of common sense, and . . . the terms . . . so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.' " *Id.* (citation omitted).

Here, the terms of the agreement do not reveal so inequitable a bargain as to " 'shock the judgment of a person of common sense[.]' " *Id.* (citation omitted). The agreement, the terms of which applied equally to both parties, recognized that both parties had children from previous marriages and possessed separate property obtained through inheritance and other means. The agreement then waived *all marital rights, including intestacy rights, but permitted each party* to make specific devises, bequests, and legacies to the other, as specifically permitted by N.C. Gen. Stat. § 52B-4(a)(3) (2005). Such an agreement between individuals with prior marriages and offspring from those unions is not " 'so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.' " *King* at 458, 442 S.E.2d at 157 (citation omitted). As a matter of law, the terms of the agreement are not substantively unconscionable. As we find no substantive unconscionability as a matter of law, we need not address plaintiff's contentions that material issues of fact exist as to procedural unconscionability.

II

[2] Plaintiff next contends that the agreement was void under section 52B-7(a)(1), as the agreement was not voluntary. We agree.

As discussed *supra*, the statute states that a "marital agreement is not enforceable if the party against whom enforcement is sought proves that [the] party did not execute the agreement voluntarily[.]" N.C. Gen. Stat. § 52B-7(1)(a). The statute does not define the term voluntary, and a review of our existing case law reveals that few cases have applied the statute since its enactment in 1987.[1] However,

---

1. We note that this Court reversed an award of summary judgment as to enforcement of a premarital agreement under the statute in the case of *Atassi v. Atassi*, 117

in *Howell v. Landry*, 96 N.C. App. 516, 386 S.E.2d 610 (1989), a case concerning the voluntary nature of a premarital agreement entered into before the effective date of the statute, this Court found that such agreements are unenforceable if procured by undue influence, duress, coercion, or fraud, and further found that due to the confidential nature of the relationship, "there must be full disclosure between the parties as to their respective financial status." *Id.* at 525, 386 S.E.2d at 615.

The issue of financial disclosure was more specifically addressed in the case of *Tiryakian v. Tiryakian*, 91 N.C. App. 128, 370 S.E.2d 852 (1988), which also concerned a premarital agreement signed before the effective date of the statute. In *Tiryakian*, the bride was asked to meet the groom on the day before the wedding at his attorney's office to execute a legal document. *Id.* at 131, 370 S.E.2d at 853. The bride was given several copies of the premarital agreement in the parking lot of the attorney's office, and conflicting evidence was offered as to what was disclosed at that time. *Id.* The groom stated that the terms of the agreement were discussed and the bride was aware of its contents, while the bride contended that no specifics were discussed and that she was told, and believed, that the documents were to protect the groom's interest in his grandmother's estate. *Id.* The bride did not read the agreement or consult with an attorney, but instead rushed to her bank, had her signature notarized, and promptly returned the documents. The couple were married the next day. *Id.*

The Court in *Tiryakian* recognized the confidential relationship of persons about to marry, and the corresponding "affirmative duty on the part of each perspective spouse to fully disclose his or her financial status." *Id.* at 132, 370 S.E.2d at 854. Although the agreement was entered into prior to the effective date of section 52B-7, *Tiryakian* noted that the Uniform Premarital Agreement Act echoed these requirements for full disclosure of financial status. *Id.* at 133, 370 S.E.2d at 854. *Tiryakian* also noted that the fact that a prenuptial agreement was drawn up by one party's attorney and not throughly explained to the other party, who was unrepresented by counsel, might influence a court's disapproval of such an agreement. *Id.* The Court concluded that the lack of full disclosure, coupled with the

N.C. App. 506, 513, 451 S.E.2d 371, 376 (1995), on the grounds that material issues of fact existed as to whether the agreement was signed under duress after the marriage date, the plaintiff had adequate knowledge of the defendant's property or financial obligations, and the agreement was unconscionable. However the case did not specifically define the term voluntary in the context of the statute.

fact that the agreement was drafted by the groom's attorney, and was signed by the bride without knowledge of its contents and without consultation of independent legal advice, voided the premarital agreement. *Id.* at 133, 370 S.E.2d at 854-55.

Here, plaintiff, who possesses only a high school education, was presented at decedent's attorney's office with a premarital agreement which waived all spousal rights, including all rights to decedent's estate, while en route to the wedding. Plaintiff avers that she understood the document to apply in the event of divorce, that the agreement was not explained to her, and that she signed the document within ten minutes of its presentation without reading it. Plaintiff further avers that decedent did not disclose his full assets and that she was unaware of the extent of his holdings at the time she signed the agreement. Finally, plaintiff avers that she was not represented by independent legal counsel. In light of *Tiryakian*, when taken in the light most favorable to plaintiff, material issues of fact exist as to whether the execution of the agreement was voluntary. Summary judgment was therefore improperly granted by the trial court.

Defendants, however, contend that the case of *Howell v. Landry* should control. We find *Howell* distinguishable. *Howell*, as discussed *supra*, also concerned an agreement entered into prior to the effective date of the Uniform Premarital Agreement Act, but raised claims of undue influence and duress in the execution of a premarital agreement, rather than the issue of financial disclosure. *Howell*, 96 N.C. App. at 526, 386 S.E.2d at 616. The bride, who held an active role in the groom's business prior to the wedding, had discussed the possibility of a premarital agreement with the groom, and had agreed to review such an agreement. *Id.* at 519, 386 S.E.2d at 612. The bride and groom planned to fly to Las Vegas to be married. The night before leaving, the groom presented the bride with an agreement which had been prepared by his attorney. *Id.* at 520, 386 S.E.2d at 612. The bride expressed interest in having her own attorney review the document, but agreed to sign it after making some adjustments to the terms, both as she wished to marry and due to her own financial involvement in the groom's business. *Id.* at 520, 386 S.E.2d at 612-13. The Court in *Howell* held that the brevity of time before the marriage alone was insufficient to establish duress, and noted the bride's awareness of the need for independent legal counsel and decision to nevertheless sign the agreement, as well as the bride's adjustments to the agreement, in determining that there was no undue influence or duress. *Id.* at 528-29, 386 S.E.2d at 618.

*Howell's* facts are distinguishable from the instant case, however, where issues of fact exist as to plaintiff's knowledge of the need for an attorney, the contents of the writing, and the extent of decedent's disclosure of his assets, rather than claims of undue influence and duress.

The trial court, therefore, improperly granted summary judgment as material issues of fact exist as to whether full disclosure was made to plaintiff prior to entering the agreement between confidential parties.

### III

We briefly address each of the concerns raised by the dissent. The dissent contends that as plaintiff admitted she "voluntarily" signed the agreement, that is signed without duress or undue influence, no material issue of fact exists. However, as discussed *supra*, full disclosure of assets is a necessary consideration in determining the voluntary nature of a prenuptial agreement. *Tiryakian* at 132-33, 370 S.E.2d at 854. Although the principles of construction applicable to contracts also apply to premarital agreements, *see Turner v. Turner*, 242 N.C. 533, 539, 89 S.E.2d 245, 249 (1955), our prior case law has made clear that this refers to the substance of separation agreements, and that further inquiry as to procedural fairness in the execution of the agreement is required for agreements formed in a confidential relationship. *See Howell* at 525, 386 S.E.2d at 615 (stating "when the parties to the agreement stand in a confidential relationship to one another, there must be full disclosure between the parties as to their respective financial status.")

The dissent further contends that *Tiryakian* is distinguishable because it addressed a prenuptial agreement in the context of equitable distribution, and was not raised from a grant of summary judgment. Although *Tiryakian* arrived before this Court in a different procedural posture than the instant case, the statements of law as the nature of the confidential relationship of persons about to marry, and the corresponding duties of disclosure which are determinative in this case nonetheless are binding. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (stating "a subsequent panel of the same court is bound by that precedent").

The dissent also appears to suggest that summary judgment was properly granted because plaintiff failed to challenge the prenuptial agreement during the course of the marriage. Our statute govern-

KORNEGAY v. ROBINSON

[176 N.C. App. 19 (2006)]

ing premarital agreements states, however, that "[any] statute of limitations applicable to an action asserting a claim for relief under a premarital agreement is tolled during the marriage of the parties to the agreement." N.C. Gen. Stat. § 52B-8 (2005). Here, plaintiff filed her action for declaratory judgment within two months of decedent's death.

The dissent contends that plaintiff bears the burden to prove that the trial court erred and has failed in this case to show error in the trial court's judgment. However, as discussed *supra*, our standard of review as to summary judgment makes clear that, "[i]f findings of fact are necessary to resolve an issue of material fact, summary judgment is improper." *Prior*, 143 N.C. App. at 617, 550 S.E.2d at 170. Plaintiff's affidavit as to her lack of knowledge of the extent of both decedent's land holdings and business enterprises, when considered in the light most favorable to plaintiff as the non-movant, is sufficient to create a material issue of fact as to whether full disclosure was made prior to the signing of the agreement. Plaintiff has therefore shown error in the trial court's grant of summary judgment.

As material issues of fact exist as to whether plaintiff entered the agreement voluntarily, summary judgment was improperly granted.

Reversed.

Judge TYSON concurring in part and dissenting in part in a separate opinion.

Judge STEELMAN concurs.

TYSON, Judge concurring in part and dissenting in part.

I concur with that portion of the majority's opinion, which correctly holds "the terms of the agreement are not substantively unconscionable."

The majority's opinion then reverses the trial court's grant of summary judgment in defendants' favor and holds "material issues of fact exist as to whether plaintiff entered the agreement voluntarily." In reaching this conclusion, the majority cites *Tiryakian v. Tiryakian*, and states "[t]he Court in *Tiryakian* recognized the confidential relationship of persons about to marry, and the corresponding 'affirmative duty on the part of each perspective spouse to fully disclose his or her financial status.' " 91 N.C. App. 128, 132, 370 S.E.2d

852, 854 (1988). While I completely agree with this statement, I disagree with the majority's application of this rule to the facts before us to reverse the trial court's judgment.

Plaintiff argues her husband failed to materially disclose all of his financial assets prior to her signing the premarital agreement. The majority's opinion holds, "summary judgment was therefore improperly granted by the trial court." I respectfully dissent from that portion of the majority's opinion that reverses the trial court's judgment.

## I.  Standard of Review

Our standard to review the grant of a motion for summary judgment is whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. A defendant may show entitlement to summary judgment by: (1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. *Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial.*

*County of Jackson v. Nichols*, 175 N.C. App. 196, 199, 623 S.E.2d 277, 279 (2005) (internal quotations and citations omitted) (emphasis supplied). Defendants showed, through the plain language of the agreement and plaintiff's deposition testimony, that plaintiff "voluntarily" executed the agreement when viewing the facts in a light most favorable to her. Plaintiff failed to meet her burden "to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that [s]he can at least establish a *prima facie* case at trial." *Id.* The trial court's judgment should be affirmed in its entirety.

## II.  Voluntariness

On appeal, the presumption remains that the trial court's judgment is correct until overcome by the appellant. *Id.* The burden rests upon the appellant to prove the trial court erred. Plaintiff has failed to establish a *prima facie* case at trial or to show any error in the trial court's judgment. *Id.*

In *Howell v. Landry*, this Court stated, "[p]remarital agreements, like postmarital agreements, are generally formed within a confiden-

tial relationship. Accordingly, transactions between such parties . . . must be free of fraud, undue influence and duress, and furthermore must also be fair and reasonable." 96 N.C. App. 516, 524, 386 S.E.2d 610, 615 (1989) (citations omitted), *disc. rev. denied*, 326 N.C. 482, 392 S.E.2d 90 (1990).

Here, the contract states, and plaintiff admitted she: (1) "voluntarily" signed the premarital agreement on 12 October 1990; (2) that it was "fair and equitable;" and (3) not the result of any "duress or undue influence." Plaintiff signed the agreement before a notary public. The agreement was recorded in the Duplin County Register of Deeds a week later on 19 October 1990. Plaintiff waited until after her husband's voice was silenced by his death to bring forward her unsubstantiated oral claims to impeach the written agreement she signed.

During plaintiff's deposition, defendants' attorney asked plaintiff whether she "voluntarily sign[ed] the premarital agreement." She answered, "[y]es, sir." Plaintiff was also asked whether she had ever read the premarital agreement. Plaintiff answered, "I'm sure sometime over the years I probably looked at it." When asked, "[y]ou did read the premarital agreement sometime [after you signed it]", she answered, "[y]ears later, yes." Even though plaintiff: (1) admits she voluntarily signed the premarital agreement; (2) read the agreement; (3) retained all property and assets she owned prior to the marriage; and (4) received liquid assets exceeding three hundred thousand dollars ($300,000.00) from her husband, she now orally contests the validity of the written agreement after her husband's death.

Defendants' attorney had plaintiff read that portion of the agreement, which states, "[e]ach party acknowledged that the agreement is fair and equitable." Defendants' attorney then asked plaintiff, "[i]s the fact that you didn't read it your only reason for claiming that it was not fair and equitable?" Plaintiff responded, "[i]t's unfair, yes." This is insufficient evidence or grounds to reverse the trial court's judgment.

In her sworn affidavit, plaintiff admitted she was familiar with a substantial portion of her future husband's assets prior to the marriage. She testified:

At the time I married Byard Kornegay, I knew that he owned the farm upon which we lived and that there were four hog houses on the farm (which had been recently constructed) and knew that he

had some other farm land. At that time I also knew that he farmed land around Scott's Store, but did not know if he owned or leased that property.

In her deposition, plaintiff also acknowledged and testified she was familiar with how to use the Register of Deeds office and the tax supervisor's office and had researched property information prior to and during the marriage.

Plaintiff now contends she did not "voluntarily" sign the premarital agreement "due to totality of the circumstances existing at the time of execution of the Agreement." Plaintiff argues her lack of legal counsel and lack of an opportunity to obtain legal counsel "are important elements in the circumstances surrounding her execution of the Agreement." Plaintiff acknowledged in her deposition she never requested: (1) additional time to read the agreement; or (2) another attorney to be present to explain the agreement before she signed it. This case fits squarely within the facts and holding of *Howell*. 96 N.C. App. at 524, 386 S.E.2d at 615.

This Court has held contract rules apply to premarital agreements.

> "[A]bsent fraud or oppression . . . parties to a contract have an affirmative duty to read and understand a written contract before signing it." *Park v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 N.C. App. 120, 126, 582 S.E.2d 375, 380 (2003). And, when "interpreting contract language, the *presumption is that the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean.*" *Stewart v. Stewart*, 141 N.C. App. 236, 240, 541 S.E.2d 209, 212 (2000) (discussing *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946)).

*Roberts v. Roberts*, 173 N.C. App. 354, 357, 618 S.E.2d 761, 764 (2005). (emphasis supplied).

Plaintiff's argument that her execution was not voluntary because she did not read the agreement is without merit. Plaintiff had "an affirmative duty to read and understand [the premarital agreement] before signing it." *Park v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 N.C. App. at 126, 582 S.E.2d at 380. Plaintiff provided no evidence she was prevented from reading the agreement or that she sought separate counsel prior to signing the agreement. *Howell*, 96 N.C. App. at 524, 386 S.E.2d at 615. Plaintiff

admitted both in the agreement and at her deposition that she "voluntarily" signed the agreement.

The *Tiryakian* case, relied upon by the majority, decided prior to the enactment of N.C. Gen. Stat. § 52B, the Uniform Premarital Agreement Act, is readily distinguishable from the facts here. 91 N.C. App. at 130, 370 S.E.2d at 853. *Tiryakian* addressed a prenuptial agreement within the context of an equitable distribution. *Id.* Both parties to the agreement were alive at the time of trial and testified to the circumstances surrounding the execution of the premarital agreement. Also, *Tiryakian* was not before this Court on a ruling for a motion for summary judgment, but rather the husband appealed that portion of the trial court's order that voided the premarital agreement. *Id.*

Here, plaintiff and defendant were both previously married and had children by those marriages. Defendant had six children. Both plaintiff and defendant owned substantial real property assets prior to the marriage that remained non-marital property under the agreement. Plaintiff asserts no inequality in education or business experience between her and her husband. Plaintiff did not assert she made any disclosures to defendant of her pre-marital assets to any greater extent than her knowledge of defendant's assets on the date of the agreement.

In the agreement, plaintiff acknowledged:

> Each of the parties waives, releases, and relinquishes any right or claim that he or she now has or may acquire, pursuant to the provisions of Chapter 29 of the North Carolina General Statutes, ["Intestate Succession," including "Share of Surviving Spouse"] as such sections now exist or may hereafter be amended, to take such property of the other party through intestate succession or pursuant to any present or future laws of any State of the United States to elect to take any of such property of the other party in contravention of the terms of any last will of the other, including any last will not executed or which may be executed hereafter, or any disposition of such property made by the other during his or her lifetime or otherwise. Further, each of the parties shall refrain from any action or proceeding that may tend to void or nullify to any extent or in any particular the terms of any such last will of the other.

Plaintiff breached the agreement when she filed the underlying action in this case. Plaintiff signed the agreement over fifteen years ago. She

failed to challenge the voluntariness of her execution of the agreement until after her husband's death. She now seeks to take an additional one third of decedent's estate away from his six children from a prior marriage, after enjoying the benefits of the marriage and receiving over three hundred thousand dollars ($300,000.00) of decedent's personal property, while also retaining all her premarital property. Plaintiff's assertions that the agreement is "unfair" does not create a genuine issue of material fact that her execution of the agreement was not voluntary. We all agree that the agreement is not "substantively unconscionable." Plaintiff's chief complaint of "unfair" appears to be based upon the current value of her husband's assets, from which she has received and enjoyed the income over the fifteen years of their marriage, and not her knowledge of the nature and extent of the decedent's assets on the date of the agreement. The value of decedent's assets on the date the contract was signed controls. Plaintiff's bootstrapped claim that her execution of the agreement was not voluntary does not create any genuine issue of material fact to overcome the plain language in the agreement and her sworn admissions during her deposition. The trial court's judgment should be affirmed in its entirety.

### III.  Conclusion

Based upon the plain language of the agreement, and plaintiff's sworn testimony at her deposition, plaintiff failed to carry her burden to show genuine issues of material fact are present to warrant a reversal of the trial court's grant of summary judgment in favor of defendants.

The result reached by the majority opinion is especially damaging in light of its disregard of the sanctity of a solemn written agreement, probated before a notary public, promptly recorded in the public land records of the county, and unchallenged for over fifteen years. The ruling is a wholesale disregard of the bargained for and settled expectations of parties of equal bargaining power in preference to wholly unsupported parol averments in direct contradiction to the terms of the written agreement. No regard is shown for the plaintiff's and decedent's clearly stated bargain, long after the decedent is no longer able to explain or defend the circumstances surrounding the execution of the agreement. This result will only cause great uncertainty into the finality and enforceability of an admittedly voluntary agreement entered into lawfully.

The six children of the decedent are forced to suffer further delays and great expense to quiet title to the real property inherited

from their father, while plaintiff continues to enjoy all the benefits she retained under the agreement and the assets she received during her marriage to the decedent. The fact that the decedent's assets grew during the marriage does not make the agreement unconscionable or unfair. It can be presumed that the value of plaintiff's retained premarital assets also increased, and the record shows plaintiff acquired virtually all of the decedent's personal and intangible assets during the marriage.

I vote to concur that the agreement was not unconscionable and affirm the trial court's judgment in its entirety. I respectfully dissent from any holding that plaintiff did not voluntarily execute the agreement.