IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-713

 Filed: 15 September 2020

Mecklenburg County, No. 15 E 002702

JUDITH E. CROSLAND, Petitioner,

 v.

BAILEY PATRICK, JR., as Executor of the Estate of JOHN CROSLAND, JR.,
Respondent.

 Appeal by Defendant from order entered 24 May 2019 by Judge Louis A. Trosch

in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 January

2020.

 Shumaker, Loop & Kendrick, LLP, by Lynn R. Chandler and Lucas D. Garber,
 for petitioner-appellant.

 Alexander Ricks PLLC, by Roy H. Michaux, Jr., for respondent-appellee.

 Essex Richards, P.A., by Jonathan E. Buchan, Jr., for intervenor.

 MURPHY, Judge.

 Where specific allegations, which could establish the presence of a genuine

factual dispute are barred by the Dead Man’s Statute, no genuine issues of material

fact exist and summary judgment is proper. Additionally, where the statute of

limitations for a contract and fraud claim is three years, the statute of limitations

bars any claim of fraud, duress, or undue influence after three years. Here, the
 CROSLAND V. PATRICK

 Opinion of the Court

prenuptial agreement was signed and executed thirty-seven years prior to this

Petition for Elective Share, and the statute of limitation bars any challenge.

Moreover, the alleged unilateral revocation of the prenuptial agreement argued in

the pleadings has no legal significance. The trial court properly granted Respondent’s

motion for summary judgement.

 BACKGROUND

 John Crosland, Jr. (“Husband”) died testate on 2 August 2015. His Last Will

and Testament was executed on 7 August 2013 and admitted to probate 13 August

2015. Judith E. Crosland (“Wife”), as the surviving spouse, filed a Petition for Elective

Share on 15 October 2015. She requested the trial court determine if the value of

property passing to her under Husband’s estate plan was less than fifty percent of his

estate as provided by N.C.G.S. § 30-3.1.

 On 5 November 2015, Respondent, Bailey Patrick, Jr. (“Executor”), as Executor

of Husband’s estate, filed a notice of transfer to Superior Court to determine all issues

relating to or arising out of the Petition for Elective Share, and seeking a declaratory

judgment that the prenuptial agreement dated and signed on 3 February 1978 (“the

Agreement”) was in all respects valid and enforceable. Executor argued the

Agreement, if valid, would bar any claim for an elective share sought by Wife.

Executor also sought a stay pending a determination as to whether the Agreement

barred Wife’s right to pursue an elective share.

 -2-
 CROSLAND V. PATRICK

 Opinion of the Court

 Wife claims Husband first presented the Agreement to her on 3 February 1978,

the night before their wedding. In her deposition, Wife testified she did not feel she

had a choice regarding whether to sign the Agreement because she believed the

wedding would not go forward unless she signed it. Both Husband and Wife signed

the Agreement on 3 February 1978; their signatures were acknowledged before a

Notary Public that same day.

 Wife filed a reply to Executor’s counterclaim for declaratory judgment (“the

Reply”) on 8 December 2015, which asserted the Agreement was invalid and

unenforceable based upon allegations it was signed under duress, it was procured

without adequate disclosure of material financial information, and it had been

“revoked” by Husband during his lifetime. The Reply included the following:

 [Executor’s] Counterclaim is barred in whole or in part
 because the document entitled “[Prenuptial] Agreement”
 was revoked by [Husband] during his lifetime.

 [Executor’s] Counterclaim is barred in whole or in part by
 waiver, as [Husband] evidenced his intent to revoke and
 did revoke the document entitled “[Prenuptial] Agreement”
 during his lifetime.

 [Executor’s] Counterclaim is barred in whole or in part by
 estoppel, as [Husband] evidenced his intent to revoke and
 did revoke the document entitled “[Prenuptial] Agreement”
 during his lifetime.

 Wife died 16 October 2018. On 11 January 2019, Branch Banking & Trust

Company (“BB&T”), as Executor for Wife’s estate, was substituted as Petitioner.

 -3-
 CROSLAND V. PATRICK

 Opinion of the Court

 On 27 March 2019, Executor moved for summary judgment pursuant to Rules

7 and 56 of the North Carolina Rules of Civil Procedure and for dismissal of the

Petition for Elective Share under N.C.G.S. § 30-3.1. On 23 April 2019, Wife filed a

cross-motion for summary judgment declaring the Agreement void (or alternatively

voidable) and unenforceable.

 An order was entered 24 May 2019 granting Executor’s Motion for Summary

Judgment and denying Wife’s cross-motion for summary judgment. Wife appealed.

 ANALYSIS

 A. Standard of Review

 Our standard of review of an appeal from summary
 judgment is de novo; such judgment is appropriate only
 when the [R]ecord shows that there is no genuine issue as
 to any material fact and that any party is entitled to a
 judgment as a matter of law. When considering a motion
 for summary judgment, the trial judge must view the
 presented evidence in a light most favorable to the
 nonmoving party. If the movant demonstrates the absence
 of a genuine issue of material fact, the burden shifts to the
 nonmovant to present specific facts which establish the
 presence of a genuine factual dispute for trial.

In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (internal citations

and quotation marks omitted).

 Our standard of review for decisions regarding N.C.G.S. § 8C-1, Rule 601(c),

commonly known as the Dead Man’s Statute, is also de novo. In re Will of Baitschora,

207 N.C. App. 174, 181, 700 S.E.2d 50, 55-56 (2010).

 -4-
 CROSLAND V. PATRICK

 Opinion of the Court

 [T]he function of Rule 601(c) is to exclude proffered
 testimony when it is shown (1) that such witness is a party,
 or interested in the event, (2) that his testimony relates to
 a personal transaction or communication with the deceased
 person, (3) that the action is against the personal
 representative of the deceased or a person deriving title or
 interest from, through or under the deceased, and (4) that
 the witness is testifying in his own behalf or interest.

Id. at 180, 700 S.E.2d at 55 (quoting In re Will of Lamparter, 348 N.C. 45, 51, 497

S.E.2d 692, 695 (1998) (internal quotation marks omitted). There is

 nothing in the language of Rule 601(c) [to] suggest[ ] that
 the implementation of the Dead Man’s Statute involves the
 making of a discretionary determination, although the fact
 that its application may, under some circumstances,
 involve what amounts to a relevance determination does
 suggest that a degree of deference should be given to the
 trial court’s decision.

Id. at 180-81, 700 S.E.2d at 55. Accordingly,

 the standard of review for use in [reviewing a ruling under
 Rule 601(c)] is one that involves a de novo examination of
 the trial court’s ruling, with considerable deference to be
 given to the decision made by the trial court in light of the
 relevance-based inquiries that are inherent in the
 resolution of certain issues involving application of Rule
 601(c).

Id. at 181, 700 S.E.2d at 55-56.

 B. Dead Man’s Statute

 “The North Carolina ‘Dead Man’s Statute,’ formerly N.C.G.S. § 8-51 and now

codified in Rule 601(c) of the Rules of Evidence, N.C.G.S. § 8C-1, Rule 601(c), has

traditionally prohibited testimony involving both ‘transactions’ and ‘communications’

 -5-
 CROSLAND V. PATRICK

 Opinion of the Court

by individuals who would potentially benefit from the alleged statements of a

deceased individual.” In re Will of Lamparter, 348 N.C. 45, 49, 497 S.E.2d 692, 694

(1998). The Dead Man’s Statute, as now codified, is “applicable only to oral

communications between the party interested in the event and the deceased.” Id.

 Although a person interested in the event of the action is
 disqualified, his interest must be a direct legal or pecuniary
 interest in the outcome of the litigation. The key word in
 this phrase is legal, the cases as a whole showing that the
 ultimate test [in determining an interested party] is
 whether the legal rights of the witness will be affected one
 way or the other by the judgment in the case.

Rape v. Lyerly, 287 N.C. 601, 622, 215 S.E.2d 737, 750 (1975) (internal quotation

marks omitted). “The purpose of [the Dead Man’s Statute] is to exclude evidence of

statements made by deceased persons, since those persons are not available to

respond.” Estate of Redden ex rel. Morley v. Redden, 194 N.C. App. 806, 808, 670

S.E.2d 586, 588 (2009) (internal quotation marks omitted).

 The crux of this case rests upon whether or not the Agreement is valid and

enforceable, and accordingly, whether Executor’s motion for summary judgment was

properly granted. On appeal, Wife argues the Agreement was void ab initio and

unenforceable as a matter of law because Husband, allegedly, failed to provide her

with financial disclosure and because the Agreement was, allegedly, revoked and

destroyed.

 To support her claim that the Agreement was void ab initio, Wife argues

Husband failed to disclose his financial status as is mandated in Tiryakian.

 -6-
 CROSLAND V. PATRICK

 Opinion of the Court

Tiryakian v. Tiryakian, 91 N.C. App. 128, 370 S.E.2d 852 (1988). There are

circumstances where “absent any voluntary waiver, especially considering the

confidential relationship between prospective spouses, the failure to fully disclose

one’s financial status is grounds for invalidating [a prenuptial] agreement.” Id. at

133, 370 S.E.2d at 855. Here, however, the evidence presented by Wife regarding

Husband’s lack of financial status disclosure was inadmissible under the Dead Man’s

Statute.

 Wife is a “person interested in the event”; she has a “direct legal or pecuniary

interest” in the outcome of the litigation. Rape, 287 N.C. at 622, 215 S.E.2d at 750.

To agree with Wife’s argument that the Agreement is void ab initio and is thereby

unenforceable would require the Agreement to be set aside. Wife’s Petition for

Elective Share would be granted, and Wife would inherit 50% of the total net assets

of Husband’s estate. See generally N.C.G.S. § 30-3.1(a)(4) (2019).

 The only evidence we have regarding the Agreement comes from Wife’s

testimony during her deposition:

 [Wife’s Attorney]: Were you expecting to be handed a
 prenuptial agreement the night before your wedding?

 [Wife]: No.

 [Wife’s Attorney]: Did [Husband] – without going into
 anything he said to you, did he provide you any financial
 information when he presented you with that prenuptial?

 [Wife]: No.

 -7-
 CROSLAND V. PATRICK

 Opinion of the Court

 [Wife’s Attorney]: Had he ever presented you with financial
 information prior to that?

 [Wife]: No.

In order to understand any financial status disclosure Husband provided to Wife, as

alluded to in her deposition testimony, Wife would have to testify to oral

communications between her and Husband, who was already deceased at the time

Wife filed suit. Such testimony is barred by the Dead Man’s Statute. See N.C.G.S. §

8C-1, Rule 601(c) (2019).

 Additionally, if such testimony was not inadmissible and barred by the Dead

Man’s Statute and was allowed, additional problems could arise. For example, we

find instructive the cautions raised in Kornegay v. Robinson, 176 N.C. App. 19, 625

S.E.2d 805 (Tyson, J. dissenting), rev’d for reasons stated in dissent, Kornegay v.

Robinson, 360 N.C. 640, 637 S.E.2d 516 (2006). In Kornegay, a husband and wife

signed a prenuptial agreement;1 when the husband passed away, the wife believed

the decedent-husband had executed a will with substantial provisions in her favor,

but no such provisions were found in the will. Kornegay, 176 N.C. App. at 21, 625

S.E.2d at 806. The prenuptial agreement signed by the decedent and the wife

included a provision waiving all the wife’s rights as a spouse, including the right to

1 See Prenuptial Agreement, Black’s Law Dictionary (11th ed. 2019) (“An agreement made before
marriage [usually] to resolve issues of support and property division if the marriage ends in divorce or
by the death of a spouse. –Also termed antenuptial agreement; antenuptial contract; premarital
agreement . . . .”).

 -8-
 CROSLAND V. PATRICK

 Opinion of the Court

claim a spousal share of the decedent’s estate. Id. The wife brought an action for a

declaratory judgment against the decedent’s estate to invalidate the prenuptial

agreement; the trial court granted summary judgment dismissing the wife’s action.

Id. at 21, 625 S.E.2d at 807. On appeal to this Court, the Majority reversed the trial

court’s grant of summary judgment and held “material issues of fact exist[ed] as to

whether [the wife] entered the [prenuptial] agreement voluntarily.” Id. at 27, 625

S.E.2d at 810. Judge Tyson, concurring in part and dissenting in part, would have

affirmed the trial court’s grant of summary judgment in light of the husband being

deceased at the initiation of the lawsuit and the lack of evidence that the wife entered

the agreement involuntarily. Id. at 31-32, 625 S.E.2d at 812-13. Our Supreme Court,

in a per curiam opinion, adopted Judge Tyson’s Dissent. See Kornegay v. Robinson,

360 N.C. 640, 637 S.E.2d 516 (2006).

 Although the Dead Man’s Statute was not directly mentioned in Kornegay,

there are factual similarities that implicate the same concerns the Dead Man’s

Statute exists to protect against: “to exclude evidence of statements made by deceased

persons, since those persons are not available to respond.” Estate of Redden ex rel.

Morley, 194 N.C. App. at 808, 670 S.E.2d at 588. In Kornegay, the wife contested the

validity of a prenuptial agreement over fifteen years after it was signed, and only

after the husband had passed away, making it impossible for him to respond.

Kornegay, 176 N.C. App. at 31-32, 625 S.E.2d at 812.

 -9-
 CROSLAND V. PATRICK

 Opinion of the Court

 Here, similar to the wife in Kornegay, Wife contested the validity of the

Agreement signed thirty-seven years prior to the initiation of this lawsuit in 2015

and only brought suit after Husband had passed away. In order to support her

argument that the Agreement is void ab initio and unenforceable, Wife would be

required to testify to oral communications she had with Husband. Such oral

communications, however, are barred by the Dead Man’s Statute because Wife is an

interested party and Husband is no longer able to respond. N.C.G.S. § 8C-1, Rule

601(c) (2019).

 Moreover, as noted above, Wife’s principal argument is the Agreement is not

valid and enforceable due to Husband’s alleged failure to disclose his financial status

prior to the execution of the Agreement. In support of this argument, Wife relies on

Tiryakian. Tiryakian, however, was distinguished in Judge Tyson’s Dissent in

Kornegay, and Tiryakian is also distinguishable here.

 As stated in Kornegay, and unlike the facts before us, “Tiryakian addressed a

prenuptial agreement within the context of an equitable distribution[,] [b]oth parties

to the agreement were alive at the time of trial and [were able to testify] to the

circumstances surrounding the execution of the premarital agreement[, and] was not

before this Court on a ruling” for summary judgment. Kornegay, 176 N.C. App. at 31,

625 S.E.2d at 812 (Tyson, J., dissenting).

 - 10 -
 CROSLAND V. PATRICK

 Opinion of the Court

 Like the spouses in Kornegay, Husband and Wife were both previously married

and had children by those marriages. There is no evidence of inequality in education

or business experience between Husband and Wife. Unlike the husband and wife in

Tiryakian, and similar to the husband and wife in Kornegay, Husband passed away

before Wife challenged the Agreement. Unlike the lack of an evidentiary bar in

Tiryakian, here the only evidence Wife presented to demonstrate the alleged

invalidity of the Agreement is barred by the Dead Man’s Statute.

 C. Enforceability

 Moreover, in terms of the validity of the Agreement, “[i]t is well-settled in this

jurisdiction that a man and woman contemplating marriage may enter into a valid

contract with respect to the property and property rights of each after the marriage,

and such contracts will be enforced as written.” In re Estate of Tucci, 94 N.C. App.

428, 432-33, 380 S.E.2d 782, 784-85 (1989) (quoting In re Estate of Loftin, 285 N.C.

717, 720-21, 208 S.E.2d 670, 673-74 (1974)); see N.C.G.S. § 52-10(a) (2019).

“[Prenuptial] agreements are not against public policy, and if freely and intelligently

and justly made, are considered in many circumstances as conducive to marital

tranquility and the avoidance of . . . disputes concerning property.” Turner v. Turner,

242 N.C. 533, 538, 89 S.E.2d 245, 248 (1955).

 If we were to rule the Agreement unenforceable, we would “disregard . . . the

sanctity of a solemn written agreement, probated before a notary public, promptly

 - 11 -
 CROSLAND V. PATRICK

 Opinion of the Court

recorded in the public land records of the county, and unchallenged for over [thirty-

seven] years”; it would be a “wholesale disregard of the bargained for and settled

expectations of parties of equal bargaining power in preference to wholly unsupported

parol averments in direct contradiction to the terms of the written agreement.”

Kornegay, 176 N.C. App. at 32, 625 S.E.2d at 813 (Tyson, J., dissenting). As Judge

Tyson notes in the Kornegay Dissent, “[n]o regard [would be] shown for [Husband and

Wife’s] clearly stated bargain, long after [Husband] is no longer able to explain or

defend the circumstances surrounding the execution of the agreement.” Id. Holding

the Agreement unenforceable would “only cause great uncertainty into the finality

and enforceability of an . . . agreement entered into lawfully.” Id. Accordingly, here

Executor’s motion for summary judgment was properly granted.

 Wife further argues that Executor’s motion for summary judgment was not

properly granted because the Agreement was “revoked” during Husband’s lifetime:

 [Executor’s] Counterclaim is barred in whole or in part
 because the document entitled “[Prenuptial] Agreement”
 was revoked by [Husband] during his lifetime.

 [Executor’s] Counterclaim is barred in whole or in part by
 waiver, as [Husband] evidenced his intent to revoke and
 did revoke the document entitled “[Prenuptial] Agreement”
 during his lifetime.

 [Executor’s] Counterclaim is barred in whole or in part by
 estoppel, as [Husband] evidenced his intent to revoke and
 did revoke the document entitled “[Prenuptial] Agreement”
 during his lifetime.

 - 12 -
 CROSLAND V. PATRICK

 Opinion of the Court

Wife is the only party who claims, in her pleadings, that the Agreement was revoked.

Wife’s son, from her first marriage, provided an affidavit to support Wife’s pleading

that the Agreement was revoked. Presuming, arguendo, that Wife’s son’s affidavit is

admissible, it is irrelevant because Wife merely claimed the Agreement was revoked

by Husband. One spouse “may not unilaterally cancel a valid marital contract[.]” In

re Estate of Tucci, 94 N.C. App. at 433, 380 S.E.2d at 785. Wife’s argument that the

Agreement was revoked is of no legal significance.

 D. Statute of Limitations

 Wife argues the Agreement is unenforceable on grounds it was signed under

duress, was procured without financial disclosure, or is unconscionable. Absent

admissible evidence the Agreement was void ab initio, the statute of limitations for

each of these claims is three years. See N.C.G.S. § 1-52(1), (9) (2019). “The statutes

of limitations contain no exception in favor of [one spouse] against [the other spouse].

. . . [The] statutes of limitation run as well between spouses as between strangers.”

Fulp v. Fulp, 264 N.C. 20, 26, 140 S.E.2d 708, 713 (1965) (internal quotation marks

omitted). The Agreement was signed before a notary and recorded in 1978. The

enforceability and validity of the Agreement was not brought into question until 2015,

thirty-seven years after it was entered into and after any “alleged fraud” was

discovered. See Swartzberg v. Reserve Life Insurance Co., 252 N.C. 150, 156, 113

S.E.2d 270, 276-77 (1960) (holding that the statute of limitations in N.C.G.S. § 1-52(9)

 - 13 -
 CROSLAND V. PATRICK

 Opinion of the Court

“appl[ies] to all actions, both legal and equitable, where fraud is an element, and to

all forms of fraud, including deception, imposition, duress, and undue influence”).

 Wife argues “the statute of limitations [did not begin] to run, if at all, [until]

[Husband] died and [Wife] discovered that [Executor] sought to enforce the

[Prenuptial] Agreement against her.” However, we have held the “cause of action

accrues when the wrong is complete, even though the injured party did not then know

the wrong had been committed.” Dawbarn v. Dawbarn, 175 N.C. App. 712, 717, 625

S.E.2d 186, 190 (2006) (quoting Davis v. Wrenn, 121 N.C. App. 156, 158-59, 464

S.E.2d 708, 710 (1995)); see also Baars v. Campbell Univ., Inc., 148 N.C. App. 408,

415-16, 558 S.E.2d 871, 876 (2002) (holding that the claim of undue influence accrued

at the time the deed was executed and filed, which was four years and one month

beyond the statute of limitations and was, therefore, time-barred). Thus, the claim

in this case accrued at the time Husband and Wife signed and implemented the

Agreement, which was thirty-seven years prior to the initiation of this lawsuit in

2015. Wife’s argument that the Agreement is unenforceable and voidable is,

accordingly, time-barred.

 Both parties acknowledge the Agreement is not controlled by the Uniform

Premarital Agreement Act (“UPAA”), N.C.G.S. §§ 52B-1-11. The UPAA “became

effective on 1 July 1987 and is applicable to premarital agreements executed on or

after that date.” Huntley v. Huntley, 140 N.C. App. 749, 752, 538 S.E.2d 239, 241

 - 14 -
 CROSLAND V. PATRICK

 Opinion of the Court

(2000) (citing 1987 N.C. Sess. Laws ch. 473, § 3) (emphasis added). Here, the

Agreement was signed in 1978 and therefore is not controlled by the UPAA.

Accordingly, N.C.G.S. § 52B-9, which states “[a]ny statute of limitations applicable to

an action asserting a claim for relief under a premarital agreement is tolled during

the marriage of the parties to the agreement” is not applicable. N.C.G.S. § 52B-9

(2019). The statute of limitations is not tolled in this case. We hold the three-year

statute of limitations applies and Executor’s Motion for Summary Judgment was

properly granted.

 CONCLUSION

 Executor’s Motion for Summary Judgment was properly granted and Wife’s

cross-motion for summary judgment was properly denied. The order and judgment

appealed from is affirmed.

 AFFIRMED.

 Judges DILLON and TYSON concur.

 - 15 -