EDWYN A. TIRYAKIAN v. KAREN E. TIRYAKIAN

No. 8814DC129

(Filed 16 August 1988)

1. **Husband and Wife § 2.1— antenuptial agreement—failure to disclose financial status—grounds for invalidation**

    Absent any voluntary waiver, especially considering the confidential relationship between prospective spouses, the failure fully to disclose one's financial status is grounds for invalidating an antenuptial agreement.

2. **Trusts § 13.3— purchase of condominium by husband—funds supplied by wife —resulting trust established**

    The trial court properly established a resulting trust in defendant wife's favor where plaintiff's grandmother gave defendant a check for $10,000 in her maiden name which she deposited into a separate account in her own name; she subsequently wrote a check for $10,000 to plaintiff and made a notation on it, "For the condo"; plaintiff used the funds to purchase a condominium in his own name which the parties used as their marital home; whether the grandmother intended her gift to benefit only the plaintiff was irrelevant;

Tiryakian v. Tiryakian

defendant's intentions in providing the $10,000 toward the real estate purchase were determinative; and defendant's notation on the check and her trial testimony that she always thought she had an interest in the condominium were sufficient evidence of her intention to support the establishment of a resulting trust.

3. **Divorce and Alimony § 30— equitable distribution—determination as to marital or separate property—property purchased in anticipation of marriage—no donative intent**

    In an equitable distribution proceeding where a determination must be made as to what is separate and what is marital property, the sole fact that property has been purchased in anticipation of marriage is not, in and of itself, sufficient to establish donative intent; therefore, the trial court erred in finding that certain household furnishings were marital property where they were purchased before marriage with money provided by plaintiff's grandmother.

4. **Divorce and Alimony § 30— equitable distribution—part of purchase price of automobile—separate property**

    In an equitable distribution proceeding $10,000 worth of a BMW automobile purchase price (subject to depreciation) should be denominated plaintiff husband's separate property where plaintiff's grandmother gave him $10,000 which he deposited in the parties' joint bank account and later used to pay off the loan on the car.

5. **Divorce and Alimony § 30— equitable distribution—purchase of car before marriage—separate property**

    Where plaintiff husband, two months before his marriage to defendant, paid $7,000 as a down payment on a car, the car was titled in both parties' names, and the parties shared the payments equally until one month after the marriage when the wife took them over and continued to pay them after the date of separation, the trial court erred in determining that the husband intended to make a gift to the wife of a half interest in the car and that the car was entirely marital property; rather, the car should be apportioned among the marital estate, the husband's separate estate, and the wife's separate estate. N.C.G.S. § 50-20(b)(2).

APPEAL by plaintiff from *David Q. LaBarre, Judge.* Judgment entered 22 October 1987 in District Court, DURHAM County. Heard in the Court of Appeals 8 June 1988.

*Maxwell, Martin, Freeman, and Beason, P.A., by John C. Martin and Robert A. Beason, for plaintiff-appellant.*

*R. Roy Mitchell, Jr. for defendant-appellee.*

BECTON, Judge.

Plaintiff, Edwyn A. Tiryakian, hereinafter the husband, brought this action seeking an absolute divorce. Defendant, Karen E. Tiryakian, hereinafter the wife, filed an "Answer and Cross

Action" seeking, among other things, equitable distribution pursuant to N.C. Gen. Stat. Sec. 15-20. An absolute divorce, based on a one-year separation, was entered on 10 February 1987, and a hearing upon the wife's claim for equitable distribution was held in August 1987. Following that hearing, the trial court entered an order which, among other things: (1) voided an antenuptial agreement signed by the wife on the afternoon before the wedding, (2) created a resulting trust in favor of the wife in the amount of $10,000, and (3) designated as marital certain personal property acquired prior to and during the course of the marriage. The husband appeals. We affirm the trial court's ruling regarding the antenuptial agreement and the resulting trust. We reverse and remand for further findings of fact regarding the designation as marital of certain items of personal property.

I

Husband and wife were married on 15 September 1984. During the marriage, the husband was employed as a securities analyst with a brokerage firm in Durham where he earned $15,000 per year. He also received an annual gift of $10,000 from his grandmother. The wife is a high school graduate who worked as a travel agent during the course of the marriage. Her annual income was approximately $13,000.

Two months prior to their wedding, the husband's grandmother, Mrs. Keghinee Tiryakian, expressed an interest in providing the couple with a marital home. The parties selected a condominium in Durham priced at $72,000. In order to pay for the property, the grandmother gave several checks to different people. She gave one check for $10,000 to the wife in her maiden name, Karen E. Whitfield, and a second one for $10,000 to the husband's mother. She gave three more checks to the husband, altogether totaling $60,000. None of the checks contained any notations.

On 11 July 1984, the wife wrote the husband a check for $10,000 which contained the notation "for the condo." Six days later, the husband purchased the condominium which was deeded solely in his name. The wife was not present at the closing. The parties used the remaining funds to purchase household furniture and appliances.

During July of that same year, the parties also purchased a 1984 Datsun Maxima for $12,000. The husband used $7,000 of his own funds for the down payment, and the parties agreed to make equal contributions towards the finance payments. The car was titled in both names. In October of 1984, the wife took over the car payments and continued to make them after the date of separation.

On 14 September 1984, one day before their wedding, the husband called the wife and asked her to meet him at his attorney's office to execute a legal document. The wife met the husband in the parking lot, and he gave her an antenuptial agreement with several copies. There is conflicting evidence as to what was disclosed at this point. The husband testified that he and the wife had discussed the terms of the agreement earlier and the wife was well aware of its contents. The wife testified that, although the husband had once raised the issue of an antenuptial agreement, they had not discussed any specifics and she had expressed no interest in entering into one. She also testified that on the day in question, the husband told her, and she believed, that the document was to protect his interest in his grandmother's estate.

The wife never read the agreement, nor did she consult with an attorney about its contents. Instead, she rushed to her bank, had her signature notarized, and returned the documents within forty minutes. That evening, as the couple left their rehearsal dinner, the husband presented the wife with one of the copies which she had failed to sign. No further disclosures were made, the wife did not attempt to read the document; and she signed it immediately. The parties were married the next day.

During their marriage, the parties purchased a 1985 BMW 318i and other household items. At the time of separation, their joint checking and savings accounts had a balance of approximately $700.

II

The husband appeals, arguing that the trial court erred by: (1) voiding the antenuptial agreement because the evidence showed that the wife signed it voluntarily and had knowledge of its contents and the husband's financial status; (2) creating a re-

sulting trust in favor of the wife because the check from the grandmother to the wife was intended to benefit the husband; and (3) classifying as marital certain items of personal property purchased prior to and during the marriage because they were separate property acquired by the husband without donative intent to the wife.

### III

[1]  The husband first argues that the trial court erred in ruling the antenuptial agreement void and unenforceable because the wife chose not to review the document and signed it voluntarily after the husband had disclosed its contents and his own financial status. Before addressing the sufficiency of the evidence supporting the ruling, we review the standards which govern the enforceability of such agreements.

North Carolina has recently enacted the Uniform Premarital Agreement Act, N.C. Gen. Stat. Chapter 52B. However, the contract at bar predates the effective date of that legislation. The relevant statutes allow persons about to be married to release their rights, as acquired by marriage, to the property of the other spouse, N.C. Gen. Stat. Sec. 52-10(a), and to provide for the distribution of marital property by written agreement, N.C. Gen. Stat. Sec. 50-20(d). Moreover, prior to the aforementioned statutes, our Courts held that premarital agreements were not against public policy. *Turner v. Turner*, 242 N.C. 533, 89 S.E. 2d 245 (1955).

Our research, however, reveals a scarcity of North Carolina case law specifically addressing the enforceability of an antenuptial agreement based on the circumstances surrounding its execution. It has been established that "[a] confidential relationship . . . exists between a couple contemplating marriage." *Sheppard v. Sheppard*, 57 N.C. App. 680, 682, 292 S.E. 2d 169, 170 (1982). In his treatise, *North Carolina Family Law*, Lee explains that persons about to marry "are not dealing at arm's length with each other. The usual consequences of a confidential relationship are present." 2 R. E. Lee, *North Carolina Family Law*, Sec. 181 at 432 (1980). Lee also quotes extensively from an article by Professor Horner Clark which recognizes an affirmative duty on the part of each prospective spouse to fully disclose his or her financial status. *Id.* at 433, quoting from Clark, "Antenuptial Contracts," 50

U. Colo. L. Rev. 141, 143-46 (1979). The article goes on to state that "[a] court's disapproval of [an] antenuptial agreement may also be influenced by the fact that it was drawn by the husband's lawyer and not thoroughly explained to the wife, or by the fact that she was not advised by counsel of her own." *Id.*

Similar provisions regarding the disclosure of financial status are echoed in North Carolina's newly adopted Uniform Premarital Agreement Act. The official comment directs us to other state statutes which determine enforceability based on full disclosure. *See* Ark. Stat. Sec. 55-309; Minn. Stat. Ann. Sec. 519.11.

In this case, the trial court found that the husband failed to make a full disclosure of his financial status, and that the wife was presented with an agreement drawn by the husband's attorney which she signed without knowledge of its contents and without seeking independent legal advice. The husband argues that there was no evidence that he failed to provide a fair and reasonable disclosure of his property. We disagree. In a non-jury trial, the court's findings of fact and conclusions of law are conclusive on appeal, so long as they are supported by competent evidence. *Henderson County v. Osteen*, 297 N.C. 113, 120, 254 S.E. 2d 160, 165 (1979). The trial court's findings of fact are supported by the wife's testimony that the husband failed to disclose either his financial status or the contents of the agreement. We therefore uphold the court's decision to void the antenuptial agreement. Considering the applicable statutory and case law, we hold that, absent any voluntary waiver, especially considering the confidential relationship between prospective spouses, the failure to fully disclose one's financial status is grounds for invalidating an antenuptial agreement.

IV

[2] The husband further argues that, because the money given to the wife by the husband's grandmother prior to the marriage was meant to benefit the husband, the trial court erred in establishing a $10,000 resulting trust in the wife's favor. The argument is without merit.

It is well established that when one person provides purchase money to pay for real property and the title is taken in the name of another, "a resulting trust commensurate with his in-

terest arises in favor of the one furnishing the consideration." *Mims v. Mims*, 305 N.C. 41, 46, 286 S.E. 2d 779, 784 (1982). Such a trust is not dependent upon any agreement between the parties. *Id.; Teachey v. Gurley*, 214 N.C. 288, 292, 199 S.E. 83, 86 (1938). Rather, it functions to effectuate the intention, at the time of transfer, of the party furnishing the purchase money and "such intention is to be determined from all the attendant facts and circumstances." *Mims* at 57, 286 S.E. 2d at 790; *Waddell v. Carson*, 245 N.C. 669, 674, 97 S.E. 2d 222, 226 (1957).

The husband argues, in essence, that his grandmother's intention was to give him a condominium; therefore the wife served only as a conduit for a portion of the purchase money and can claim no interest. The argument misses the point. The evidence shows that a $10,000 check was delivered into the wife's hands, that it was made out to her maiden name, that she deposited it in her separate bank account before marriage, and that the husband testified that the funds were the wife's to do with as she pleased. In much the same way, $60,000 was delivered to the husband. He argues elsewhere, and we agree, that this money was a gift to him. By the same logic, the $10,000 must have been a gift to the wife. Thus, the grandmother's intentions are irrelevant. The critical issue becomes the *wife's* intentions in providing $10,000 toward the real estate purchase, which were evidenced by the notation on her check to the husband and by her testimony at trial that she always thought she had an interest in the condominium.

The trial court stated that, at the time the wife wrote the $10,000 draft, she assumed she would have an interest in the condominium. We find no reason to overturn the trial court's finding. A resulting trust was properly established.

V

The husband assigns error to the equal distribution of certain personal property acquired before and during the marriage. However, the husband offers no reasons why the distribution of marital property should have been other than equal. Rather, he seems to argue that certain items of property were erroneously designated marital rather than separate. We find merit in some of these exceptions.

In applying this State's equitable distribution statute, N.C. Gen. Stat. Sec. 50-20, the trial court must identify with specificity the property owned by the parties, classify it as marital or separate, and then divide the marital property equally or according to equitable factors. *Nix v. Nix*, 80 N.C. App. 110, 113, 341 S.E. 2d 116, 118 (1986). The statute defines marital property as "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of separation." N.C. Gen. Stat. Sec. 50-20(b)(1). Separate property refers to property "acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent or gift during the course of the marriage." N.C. Gen. Stat. Sec. 50-20(b)(2).

This Court has interpreted the term "acquired" as having a dynamic meaning, thus adopting the source of funds theory which recognizes that because property is acquired over time, it may have a dual nature and must therefore be designated according to "whether the funds used for acquisition were marital or separate." *Mauser v. Mauser*, 75 N.C. App. 115, 118, 330 S.E. 2d 63, 66 (1985); *accord Wade v. Wade*, 72 N.C. App. 372, 325 S.E. 2d 260 (1985).

[3] The husband lists six items of property he argues were purchased with his separate funds and thus should not have been classified as marital. The trial court found that a dining room suite, a washer, a dryer, and a refrigerator were purchased prior to and in contemplation of marriage and were therefore marital. This conclusion cannot be supported by competent evidence. Instead, the evidence shows that the items were purchased with the remainder of the money provided by the grandmother. Because neither party argues that the money was anything other than a gift and because the wife has already been credited with her $10,000 resulting trust, the remaining funds must be the husband's separate property. The sole fact that the property was purchased in anticipation of marriage is not, in and of itself, sufficient to establish donative intent.

[4] The husband also argues that a 1985 BMW 318i should be denominated as separate property because his grandmother gave him $10,000 which he used to pay off the automobile loan. The evidence shows that the car was purchased during the marriage for $17,500, that the parties paid $5,000 of marital funds as a

down payment, and that they proceeded to pay off the remainder of the financing. The trial court found that soon thereafter the husband received a $10,000 draft from his grandmother which he deposited in the couple's joint bank account and later used to pay off the loan. The court concluded that the husband deposited the check "intending the same to be a contribution to marital funds." The mere act of depositing separate funds in a joint account does not deprive them of their separate property status. *Loeb v. Loeb*, 72 N.C. App. 205, 212, 324 S.E. 2d 33, 39, *cert. denied,* 313 N.C. 508, 329 S.E. 2d 393 (1985); *Meyers v. Meyers*, 68 N.C. App. 177, 180-181, 314 S.E. 2d 809, 812 (1984). Absent the deposit, the record shows no evidence of the husband's donative intent. Therefore, $10,000 of the BMW purchase price should be considered the husband's separate property. This amount will be subject to the same rate of depreciation as the car itself.

[5]   The husband also argues that a 1984 Datsun should not have been included as marital property. We find some merit in this argument. The trial court found that two months prior to the marriage, the husband paid $7,000 as a down payment, that the car was titled in both parties' names, and that the parties shared equally the payments until some time in October of 1984 when the wife took them over and continued to pay them after the date of separation. The trial court concluded that "by making the down payment and placing the automobile in joint names, the [husband] intended that a gift be made to the wife of one-half interest in the automobile." We disagree.

Again we return to the source of funds theory to determine which estate is entitled to the property. The $7,000 down payment was clearly the husband's separate property. The equitable distribution statute states that, regardless of title, "property acquired in exchange for separate property shall remain separate . . . unless a contrary intent is expressly stated in the conveyance." N.C. Gen. Stat. Sec. 50-20(b)(2). Thus, the trial court's conclusion of donative intent cannot be supported by its findings of fact. Furthermore, it appears that both parties made payments out of separate funds prior to the marriage and that the wife continued to make payments out of separate funds after the date of separation. The trial court made no findings and the transcript reveals no evidence indicating the number or amount of these payments. For the above stated reasons, we remand for further

findings of fact with instructions that each estate (husband's separate, wife's separate, and marital) be apportioned its pro rata share.

## VI

Finally, the wife seeks, through a cross-assignment of error, to overturn the trial court's holding that the condominium was the husband's separate property, arguing that it should have been denominated as marital and thus subject to equitable distribution. This argument, which purports to show that the judgment was erroneously entered, can only be raised by appeal. *St. Clair v. Rakestraw*, 67 N.C. App. 602, 607, 313 S.E. 2d 228, 232, *rev'd in part on other grounds*, 313 N.C. 171, 326 S.E. 2d 19 (1984). Because the wife did not appeal from the judgment, this cross-assignment of error is not properly before this Court and is therefore dismissed.

In summary, we uphold the trial court's voiding of the antenuptial agreement and the establishment of a $10,000 resulting trust in favor of the wife. We remand with instructions that the dining room suite, the washer, the dryer, the refrigerator, and $10,000 worth of the BMW purchase price (subject to depreciation) be denominated the husband's separate property and that further findings of fact be made regarding the source of all funds used to purchase the 1984 Datsun Maxima.

Affirmed in part, reversed in part, and remanded.

Judges WELLS and PHILLIPS concur.