An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1124

Filed: 6 October 2015

Cumberland County, No. 12 CVD 7133

DEANNE HARDIN, Plaintiff,

v.

KENNETH HARDIN, Defendant.

Appeal by defendant from order entered 23 May 2014 by Judge Robert J. Stiehl, III, in Cumberland County District Court. Heard in the Court of Appeals 18 March 2015.

> *No brief filed on behalf of plaintiff-appellee.*
>
> *Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson and K. Edward Greene, for defendant-appellant.*

GEER, Judge.

Defendant Kenneth Hardin appeals from an equitable distribution order awarding the entire marital estate to plaintiff Deanne Hardin. On appeal, defendant challenges the sufficiency of the evidence to support the trial court's classification and valuation of certain property included in the marital estate and argues that the findings are insufficient to support an unequal division of the marital property. We hold that the trial court's findings of fact, which show that defendant has a significant

amount of property in his separate estate and earns a substantially higher income than plaintiff, are sufficient to support the trial court's decision to make an unequal division of property in plaintiff's favor. However, because the evidence is insufficient to support the trial court's classification and valuation of the parties' BMW and the amount of marital funds expended on defendant's lake house, we reverse and remand for further findings of fact.

Facts

Plaintiff and defendant were married on 28 May 2011 and separated approximately seven months later on 5 January 2012. On 13 August 2012, plaintiff filed a complaint seeking post-separation support, alimony, and equitable distribution. On 8 January 2013, the trial court entered an order requiring defendant to pay plaintiff $200.00 a month in post-separation support. A hearing was held on 18 November 2013 on plaintiff's claims for alimony and equitable distribution, and, on 23 May 2014, the trial court entered an order in which it found the following facts.

Prior to marriage, the parties entered a premarital agreement providing that the parties' separate property would remain separate during the marriage and would be retained by each party upon separation. Plaintiff's income would remain her separate property, but the income derived from defendant's businesses -- Painting by Bill, AAA Hauling of North Carolina, and A and T Storage Trailers -- would be marital

property. Debt incurred during the marriage would not be considered a joint debt unless both parties signed and executed the obligation for the debt jointly.

The trial court found that defendant's separate property included several pieces of real estate, including the marital home located on East Park Drive and a vacation home at Lake Gaston, a Harley Davidson, a 1999 Dodge truck, a boat, an airplane, stocks, and a savings account. Defendant had purchased the land for the lake house in 2010, contributed $20,000.00 of his separate funds as a cash down payment, and another $40,800.00 to begin construction on the house. Plaintiff did not contribute any of her separate property towards the land purchase or the construction. On 8 April 2011, defendant signed off on a $325,000.00 construction loan for the lake house and, as of 23 July 2011, there was a total loan of $335,000.00 on the lake house. On the date of separation, the indebtedness on the loan totaled $330,463.00.

The trial court found that the marital estate consisted of $8,060.46 in marital funds contributed to pay the mortgage on the East Park Drive home, $22,500.96 in marital funds contributed to pay the mortgage on the Lake Gaston home, $5,615.00 of marital funds contributed towards payments on the BMW, and $12,588.15 in wage contributions that were deposited and existing in defendant's checking account on the date of separation. The trial court concluded that an equal distribution of the marital estate would be inequitable and awarded plaintiff $45,249.57 and the BMW. The

trial court additionally concluded that plaintiff is not a dependent spouse and denied alimony. Defendant timely appealed the order to this Court.

Discussion

Equitable distribution is governed by N.C. Gen. Stat. § 50-20 (2013), which requires the trial court to conduct a three-step process: (1) classify property as being marital, divisible, or separate property; (2) calculate the net value of the marital and divisible property; and (3) distribute equitably the marital and divisible property. *Cunningham v. Cunningham*, 171 N.C. App. 550, 555, 615 S.E.2d 675, 680 (2005). This Court reviews an equitable distribution order to determine whether there is competent evidence in the record to support the findings of fact and whether the findings support the conclusions of law. *Stovall v. Stovall*, 205 N.C. App. 405, 407, 698 S.E.2d 680, 683 (2010). With respect to the actual distribution awarded, we review for abuse of discretion. *Id.* Thus, in entering the equitable distribution order, "the court must be specific and detailed enough to enable a reviewing court to determine what was done and its correctness." *Carr v. Carr*, 92 N.C. App. 378, 379, 374 S.E.2d 426, 427 (1988).

On appeal, defendant challenges the evidence to support the trial court's classification, valuation, and distribution of each asset included in the marital estate. We address each in turn.

Defendant makes several arguments with respect to the trial court's award of the BMW to plaintiff. Defendant contends that it is unclear whether the trial court classified the BMW as marital or separate property because the findings of fact are internally inconsistent and are insufficient to determine the BMW's classification or value. We agree.

The trial court specifically addresses the BMW in finding of fact XVII:

> [T]he Court took the evidence that a BMW was purchased before the marriage, approximately May 2010; that it was titled jointly, the payments on that vehicle were approximately $350.00 per month; that there were $2,800.00 in payments made during the marriage; that the fair market value as of the date of separation was $19,300.00[1] with an indebtedness owing of $13,416.00; that the remaining balance was paid by the Plaintiff post-date of separation; that there is a net value which is separate property of $5,615.00.

Defendant points out that the portion of this finding of fact stating that "there were $2,800.00 in payments made during the marriage" is inconsistent with finding of fact XXX, where the court found that "$5,615.00 of marital funds was expended towards the BMW purchased before the marriage." Defendant asserts, and we agree, that in finding of fact XXX, the trial court mistakenly quoted the net value of the vehicle on the date of separation -- $5,615.00 -- rather than the portion of the vehicle

---

[1]This appears to be a clerical error. Both parties agreed in the final pre-trial order that the fair market value of the BMW on the date of separation was $19,030.00. Although the trial court transposed the "3" and "0" in finding XVII, it appears that it used the correct value -- $19,030.00 -- to calculate the net value of the property.

that was paid for with marital funds, which was found to be $2,800.00. In any event, it is unclear from the trial court's findings whether the trial court classified the $5,615.00 net value of the car as marital property, as indicated in finding of fact XXX, or as separate property, as indicated in finding of fact XVII. Additionally, finding of fact XVII does not specifically identify whether the BMW is the separate property of defendant or of plaintiff.

Defendant asserts that pursuant to the source of funds theory, a portion of the BMW should be considered his separate property because he contributed his separate funds for the down payment prior to the marriage. We agree. "Under [the source of funds] theory, when both the marital and separate estates contribute assets towards the acquisition of property, each estate is entitled to an interest in the property in the ratio its contribution bears to the total investment in the property." *Wade v. Wade*, 72 N.C. App. 372, 382, 325 S.E.2d 260, 269 (1985). In this case, the trial court failed to make any findings regarding the amount of defendant's contribution or plaintiff's contribution of separate funds to the purchase of the BMW. We, therefore, remand for further findings of fact, and instruct the trial court to apportion to defendant his pro rata share of the BMW. *See Tiryakian v. Tiryakian*, 91 N.C. App. 128, 136-37, 370 S.E.2d 852, 857 (1988) (holding it was error for trial court to include in marital estate vehicle purchased prior to marriage and titled jointly and remanding "for

further findings of fact with instructions that each estate (husband's separate, wife's separate, and marital) be apportioned its pro rata share").

Defendant next argues that the trial court erred in classifying as marital the $12,588.15 in his checking account on the date of separation. Defendant does not dispute that pursuant to the premarital agreement, the income received from defendant's businesses during the marriage was marital property. He argues, however, that plaintiff failed to meet her burden of showing that the funds in his checking account could be traced to income received during the marriage. He points to his premarital financial disclosure that shows a checking account balance of $12,500.00 and asserts that this evidence shows that during the seven month marriage, his checking account remained static, and, therefore, the funds in the account were not earned during the marriage. We disagree.

Plaintiff submitted into evidence the bank statement for the checking account of "KENNETH W HARDIN DBA PAINTING BY BILL" and testified that defendant used the account for the income he received from Painting by Bill. The trial court's unchallenged finding of fact XXIX states: "That with regard to the third business, Painting by Bill, the Defendant testified that Painting by Bill ceased to do business approximately October 2012 and that upon closing that business Defendant represented he lost approximately $2,000.00 per month in income[.]" In other words, the evidence shows that defendant received $2,000.00 per month in income from

Painting by Bill until defendant closed that business in October 2012. Therefore, during the approximately seven months of marriage from 28 May 2011 until 5 January 2012, defendant would have deposited approximately $14,000.00 in wage contributions from Painting by Bill into his checking account. The trial court can reasonably infer from this evidence that the funds in defendant's checking account on the date of separation were income from Painting by Bill that he earned during the marriage. The fact that the checking account balance on the date of separation is not much more than the balance prior to marriage does not preclude an inference that funds in that account were earned during the marriage.

Defendant next challenges the sufficiency of the evidence to support the trial court's finding that $22,500.96 of marital funds was spent during the marriage to pay down debts associated with the Lake Gaston house, and was, therefore, marital property. As evident from finding of fact XII, the trial court obtained this number from defendant's post-separation affidavit of support:

> [T]he Defendant represented on the three properties that carry indebtedness that he pays approximately $8,437.86 total monthly; there's no breakdown as to the individual mortgage indebtedness on each of the three properties for which he carried the debt load; that in examining the payments for the lake house, total debt load payments represented by the Defendant on a monthly basis divided by three multiplied by eight, which is the duration of the marriage, the Defendant expended $22,500.96 of marital assets to pay on his separate property by virtue of the premarital agreement.

As defendant points out, the trial court's figure assumes that the mortgage payments on all three properties were the same and that the payments remained consistent for the duration of the marriage. However, the 8 April 2011 promissory note for the construction loan on the lake house, which is a part of the record, states that defendant will make "monthly payments of accrued interest calculated on the amount of credit outstanding beginning on 05-01-2011, followed by 348 monthly payments of $1,870.51 beginning 05-01-2012. This is a variable rate loan and the payment amounts may change." The original construction loan was rolled over into a permanent loan in the amount of $335,000.00 and a second promissory note executed 23 September 2011 states that defendant's monthly payment would be $2,394.86 beginning on 1 November 2011. This evidence suggests that defendant would have made six interest-only payments from April to October 2011, and then two payments of $2,394.86 in November and December 2011.

Indeed, in finding of fact XIII, the trial court recognizes that "as of July 23, 2011 there was a total loan of $335,000.00 on the lake house; that specifically as of January 9, 2012 the indebtedness at that stage approximated $330,463.00." This evidence and finding suggests that during the marriage, defendant used $4,537.00 of marital funds to reduce the principal owed on the mortgage, plus whatever amount defendant had to pay in interest.

Accordingly, we agree that the trial court's findings of fact regarding the amount of marital funds that defendant expended on the lake house during the marriage are not supported by the evidence. We, therefore, must also reverse and remand for further findings of fact as to the marital funds spent on the lake house during the marriage.

Next, defendant argues that the trial court failed to classify, value, or properly distribute the furniture that plaintiff retained from the marriage. We agree. "[O]nly those assets and debts that are classified as marital property and valued are subject to distribution under the Equitable Distribution Act[.]" *Grasty v. Grasty*, 125 N.C. App. 736, 740, 482 S.E.2d 752, 755 (1997). Although the trial court awarded each party "the personal property that they have in their possessions[,]" it did not classify the property as marital or value the parties' furniture. On remand, the trial court must make findings of fact as to the furniture's classification and value.

Defendant also argues that the trial court erred by awarding plaintiff a distributive award that is greater than the total value of the marital property. It is well settled that "[o]nly marital property is subject to equitable distribution." *Godley v. Godley*, 110 N.C. App. 99, 108, 429 S.E.2d 382, 388 (1993). In this case, the trial court identified four assets that it classified as marital: a portion of the marital home, a portion of the lake house, a portion of the BMW, and defendant's checking account. The trial court awarded the BMW to plaintiff and a distributive award of $45,249.57.

However, excluding the BMW, the total value of the marital estate as found by the trial court was only $43,149.57. Therefore, the distributive award is $2,100.00 more than the total value of the marital estate.

Defendant suggests that the $2,100.00 accounts for plaintiff's engagement ring. The trial court found that "the engagement ring was kept by the Defendant and said ring was with the Plaintiff's separate property; that the value of said ring was $2,100.00." This finding of fact is supported by evidence showing that defendant retained the ring and turned it into a pendant for a necklace in the shape of an airplane propeller.

Here, the trial court did not, however, specifically address, in its findings of fact, whether it was including the value of the ring in its distribution of marital assets. On remand, the trial court must make further findings of fact regarding the amount of the distributive award.

To the extent that the trial court did intend to include the value of plaintiff's ring as part of the distributional award to plaintiff, the trial court erred. In equitable distribution proceedings, the trial court is entitled to order a spouse to return the separate property of the other spouse. *See McKissick v. McKissick*, 129 N.C. App. 252, 255, 497 S.E.2d 711, 713 (1998) (holding trial court has jurisdiction to enter order pursuant to N.C. Gen. Stat. § 50-20(i) requiring the return of separate property to spouse); N.C. Gen. Stat. § 50-20(i) ("Upon filing an action . . . requesting an equitable

distribution . . . a party may seek injunctive relief pursuant to G.S. 1A-1, Rule 65 and Chapter 1, Article 37, to prevent the disappearance, waste or conversion of property alleged to be marital property, divisible property, or separate property of the party seeking relief."). Furthermore, "[i]n an action to recover the possession of personal property, judgment for the plaintiff may be for the possession, or for the recovery of possession, *or for the value thereof in case a delivery cannot be had*, and damages for the detention." N.C. Gen. Stat. § 1-230 (2013) (emphasis added).

Thus, plaintiff is entitled to recover the engagement ring, which is her separate property, and it was error for the trial court to include the value of the ring as part of the marital estate. On remand, plaintiff may move, pursuant to N.C. Gen. Stat. § 50-20(i), for the return of the engagement ring. The trial court may either order defendant to return the ring, or, because it has been converted into other jewelry, it may choose instead to award plaintiff the value of the ring.

Finally, defendant argues that the trial court failed to make adequate findings of fact to support its unequal distribution of the marital estate. "[I]n order to divide a marital estate other than equally, the trial court must first find that an equal division is not equitable and explain why. Then, the trial court must decide what is equitable based on the factors set out in N.C. Gen. Stat. § 50-20(c)(1)-(12) after balancing the evidence in light of the policy favoring equal division." *Lucas v. Lucas*, 209 N.C. App. 492, 504, 706 S.E.2d 270, 278 (2011). "To insure that this evidence [on

the distributional factors] has been considered by the trial court, there must be findings reflecting their consideration." *Collins v. Collins*, 125 N.C. App. 113, 117, 479 S.E.2d 240, 242 (1997).

Here, the trial court made a finding that it had considered all of the distributional factors upon which evidence was presented and "in particular the following: 1. The income of the parties. 2. The property and liabilities of each party at the time of division of the properties become [sic] effective. 3. Any obligation for support arising out of a prior marriage. 4. The acts of either party to maintain, preserve, develop or expand or waste, neglect the value convert such marital property [sic] during and after the separation of the parties prior to the time of distribution." The trial court's more specific findings of fact show that defendant had a substantial amount of property and assets, that he earned up to $20,923.75 a month, and that he has no out of pocket expenditures for his personal expenses because such expenses were paid for by his businesses, over which he had full control. In contrast, plaintiff earned only $3,304.00 a month post-separation and had reasonable expenses of $2,200.00 per month. There were no findings that plaintiff had any separate property that had a substantial value. Additionally, the trial court found that during the marriage, defendant "utilized marital property to pay down debts associated with his separate property."

These findings of fact show that there exists a vast disparity in the value of the parties' estates and incomes, which this Court has found to be a sufficient ground to justify an unequal distribution of marital property. *See Mrozek v. Mrozek*, 129 N.C. App. 43, 51, 496 S.E.2d 836, 842 (1998) (parties' disparate income and future earning capacity provided one ground for unequal distribution of marital estate); *Beightol v. Beightol*, 90 N.C. App. 58, 64, 367 S.E.2d 347, 351 (1988) (holding trial court did not abuse its discretion in awarding unequal distribution based in part on disparity in parties' earning abilities, husband's unvested pension fund, and wife's lack thereof).

Accordingly, we hold that the trial court did not abuse its discretion in awarding an unequal distribution of property. However, because there is insufficient evidence to support the trial court's valuation of certain assets in the marital estate and because, in any event, the distributive award is greater than the total value of the marital estate, we must reverse the equitable distribution portion of the order and remand for further findings of fact as set forth in this opinion.

REVERSED AND REMANDED IN PART.

Judges ELMORE and INMAN concur.

Report per Rule 30(e).