IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-713

Filed: 15 September 2020

Mecklenburg County, No. 15 E 002702

JUDITH E. CROSLAND, Petitioner,

v.

BAILEY PATRICK, JR., as Executor of the Estate of JOHN CROSLAND, JR., Respondent.

Appeal by Defendant from order entered 24 May 2019 by Judge Louis A. Trosch in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 January 2020.

> *Shumaker, Loop & Kendrick, LLP, by Lynn R. Chandler and Lucas D. Garber, for petitioner-appellant.*

> *Alexander Ricks PLLC, by Roy H. Michaux, Jr., for respondent-appellee.*

> *Essex Richards, P.A., by Jonathan E. Buchan, Jr., for intervenor.*

MURPHY, Judge.

Where specific allegations, which could establish the presence of a genuine factual dispute are barred by the Dead Man's Statute, no genuine issues of material fact exist and summary judgment is proper. Additionally, where the statute of limitations for a contract and fraud claim is three years, the statute of limitations bars any claim of fraud, duress, or undue influence after three years. Here, the

prenuptial agreement was signed and executed thirty-seven years prior to this *Petition for Elective Share*, and the statute of limitation bars any challenge. Moreover, the alleged unilateral revocation of the prenuptial agreement argued in the pleadings has no legal significance. The trial court properly granted Respondent's motion for summary judgement.

## **BACKGROUND**

John Crosland, Jr. ("Husband") died testate on 2 August 2015. His *Last Will and Testament* was executed on 7 August 2013 and admitted to probate 13 August 2015. Judith E. Crosland ("Wife"), as the surviving spouse, filed a *Petition for Elective Share* on 15 October 2015. She requested the trial court determine if the value of property passing to her under Husband's estate plan was less than fifty percent of his estate as provided by N.C.G.S. § 30-3.1.

On 5 November 2015, Respondent, Bailey Patrick, Jr. ("Executor"), as Executor of Husband's estate, filed a notice of transfer to Superior Court to determine all issues relating to or arising out of the *Petition for Elective Share*, and seeking a declaratory judgment that the prenuptial agreement dated and signed on 3 February 1978 ("the Agreement") was in all respects valid and enforceable. Executor argued the Agreement, if valid, would bar any claim for an elective share sought by Wife. Executor also sought a stay pending a determination as to whether the Agreement barred Wife's right to pursue an elective share.

Wife claims Husband first presented the Agreement to her on 3 February 1978, the night before their wedding. In her deposition, Wife testified she did not feel she had a choice regarding whether to sign the Agreement because she believed the wedding would not go forward unless she signed it. Both Husband and Wife signed the Agreement on 3 February 1978; their signatures were acknowledged before a Notary Public that same day.

Wife filed a reply to Executor's counterclaim for declaratory judgment ("the Reply") on 8 December 2015, which asserted the Agreement was invalid and unenforceable based upon allegations it was signed under duress, it was procured without adequate disclosure of material financial information, and it had been "revoked" by Husband during his lifetime. The Reply included the following:

> [Executor's] Counterclaim is barred in whole or in part because the document entitled "[Prenuptial] Agreement" was revoked by [Husband] during his lifetime.
>
> [Executor's] Counterclaim is barred in whole or in part by waiver, as [Husband] evidenced his intent to revoke and did revoke the document entitled "[Prenuptial] Agreement" during his lifetime.
>
> [Executor's] Counterclaim is barred in whole or in part by estoppel, as [Husband] evidenced his intent to revoke and did revoke the document entitled "[Prenuptial] Agreement" during his lifetime.

Wife died 16 October 2018. On 11 January 2019, Branch Banking & Trust Company ("BB&T"), as Executor for Wife's estate, was substituted as Petitioner.

On 27 March 2019, Executor moved for summary judgment pursuant to Rules 7 and 56 of the North Carolina Rules of Civil Procedure and for dismissal of the *Petition for Elective Share* under N.C.G.S. § 30-3.1. On 23 April 2019, Wife filed a cross-motion for summary judgment declaring the Agreement void (or alternatively voidable) and unenforceable.

An order was entered 24 May 2019 granting Executor's *Motion for Summary Judgment* and denying Wife's cross-motion for summary judgment. Wife appealed.

## ANALYSIS

### A. Standard of Review

> Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the [R]ecord shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial.

*In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (internal citations and quotation marks omitted).

Our standard of review for decisions regarding N.C.G.S. § 8C-1, Rule 601(c), commonly known as the Dead Man's Statute, is also *de novo*. *In re Will of Baitschora*, 207 N.C. App. 174, 181, 700 S.E.2d 50, 55-56 (2010).

- 4 -

> [T]he function of Rule 601(c) is to exclude proffered testimony when it is shown (1) that such witness is a party, or interested in the event, (2) that his testimony relates to a personal transaction or communication with the deceased person, (3) that the action is against the personal representative of the deceased or a person deriving title or interest from, through or under the deceased, and (4) that the witness is testifying in his own behalf or interest.

*Id.* at 180, 700 S.E.2d at 55 (quoting *In re Will of Lamparter*, 348 N.C. 45, 51, 497 S.E.2d 692, 695 (1998) (internal quotation marks omitted).  There is

> nothing in the language of Rule 601(c) [to] suggest[ ] that the implementation of the Dead Man's Statute involves the making of a discretionary determination, although the fact that its application may, under some circumstances, involve what amounts to a relevance determination does suggest that a degree of deference should be given to the trial court's decision.

*Id.* at 180-81, 700 S.E.2d at 55.  Accordingly,

> the standard of review for use in [reviewing a ruling under Rule 601(c)] is one that involves a *de novo* examination of the trial court's ruling, with considerable deference to be given to the decision made by the trial court in light of the relevance-based inquiries that are inherent in the resolution of certain issues involving application of Rule 601(c).

*Id.* at 181, 700 S.E.2d at 55-56.

## B. Dead Man's Statute

"The North Carolina 'Dead Man's Statute,' formerly N.C.G.S. § 8-51 and now codified in Rule 601(c) of the Rules of Evidence, N.C.G.S. § 8C-1, Rule 601(c), has traditionally prohibited testimony involving both 'transactions' and 'communications'

by individuals who would potentially benefit from the alleged statements of a deceased individual." *In re Will of Lamparter*, 348 N.C. 45, 49, 497 S.E.2d 692, 694 (1998). The Dead Man's Statute, as now codified, is "applicable only to oral communications between the party interested in the event and the deceased." *Id.*

> Although a person interested in the event of the action is disqualified, his interest must be a direct legal or pecuniary interest in the outcome of the litigation. The key word in this phrase is legal, the cases as a whole showing that the ultimate test [in determining an interested party] is whether the *legal rights* of the witness will be affected one way or the other by the judgment in the case.

*Rape v. Lyerly*, 287 N.C. 601, 622, 215 S.E.2d 737, 750 (1975) (internal quotation marks omitted). "The purpose of [the Dead Man's Statute] is to exclude evidence of statements made by deceased persons, since those persons are not available to respond." *Estate of Redden ex rel. Morley v. Redden*, 194 N.C. App. 806, 808, 670 S.E.2d 586, 588 (2009) (internal quotation marks omitted).

The crux of this case rests upon whether or not the Agreement is valid and enforceable, and accordingly, whether Executor's motion for summary judgment was properly granted. On appeal, Wife argues the Agreement was void *ab initio* and unenforceable as a matter of law because Husband, allegedly, failed to provide her with financial disclosure and because the Agreement was, allegedly, revoked and destroyed.

To support her claim that the Agreement was void *ab initio*, Wife argues Husband failed to disclose his financial status as is mandated in *Tiryakian.*

*Tiryakian v. Tiryakian*, 91 N.C. App. 128, 370 S.E.2d 852 (1988). There are circumstances where "absent any voluntary waiver, especially considering the confidential relationship between prospective spouses, the failure to fully disclose one's financial status is grounds for invalidating [a prenuptial] agreement." *Id.* at 133, 370 S.E.2d at 855. Here, however, the evidence presented by Wife regarding Husband's lack of financial status disclosure was inadmissible under the Dead Man's Statute.

Wife is a "person interested in the event"; she has a "direct legal or pecuniary interest" in the outcome of the litigation. *Rape*, 287 N.C. at 622, 215 S.E.2d at 750. To agree with Wife's argument that the Agreement is void *ab initio* and is thereby unenforceable would require the Agreement to be set aside. Wife's *Petition for Elective Share* would be granted, and Wife would inherit 50% of the total net assets of Husband's estate. *See generally* N.C.G.S. § 30-3.1(a)(4) (2019).

The only evidence we have regarding the Agreement comes from Wife's testimony during her deposition:

> [Wife's Attorney]: Were you expecting to be handed a prenuptial agreement the night before your wedding?
>
> [Wife]: No.
>
> [Wife's Attorney]: Did [Husband] – without going into anything he said to you, did he provide you any financial information when he presented you with that prenuptial?
>
> [Wife]: No.

> [Wife's Attorney]: Had he ever presented you with financial information prior to that?
>
> [Wife]: No.

In order to understand any financial status disclosure Husband provided to Wife, as alluded to in her deposition testimony, Wife would have to testify to oral communications between her and Husband, who was already deceased at the time Wife filed suit. Such testimony is barred by the Dead Man's Statute. *See* N.C.G.S. § 8C-1, Rule 601(c) (2019).

Additionally, if such testimony was not inadmissible and barred by the Dead Man's Statute and was allowed, additional problems could arise. For example, we find instructive the cautions raised in *Kornegay v. Robinson*, 176 N.C. App. 19, 625 S.E.2d 805 (Tyson, J. dissenting), *rev'd for reasons stated in dissent, Kornegay v. Robinson*, 360 N.C. 640, 637 S.E.2d 516 (2006). In *Kornegay*, a husband and wife signed a prenuptial agreement;[1] when the husband passed away, the wife believed the decedent-husband had executed a will with substantial provisions in her favor, but no such provisions were found in the will. *Kornegay*, 176 N.C. App. at 21, 625 S.E.2d at 806. The prenuptial agreement signed by the decedent and the wife included a provision waiving all the wife's rights as a spouse, including the right to

---

[1] *See Prenuptial Agreement*, Black's Law Dictionary (11th ed. 2019) ("An agreement made before marriage [usually] to resolve issues of support and property division if the marriage ends in divorce or by the death of a spouse. –Also termed *antenuptial agreement; antenuptial contract; premarital agreement . . . .*").

claim a spousal share of the decedent's estate. *Id.* The wife brought an action for a declaratory judgment against the decedent's estate to invalidate the prenuptial agreement; the trial court granted summary judgment dismissing the wife's action. *Id.* at 21, 625 S.E.2d at 807. On appeal to this Court, the Majority reversed the trial court's grant of summary judgment and held "material issues of fact exist[ed] as to whether [the wife] entered the [prenuptial] agreement voluntarily." *Id.* at 27, 625 S.E.2d at 810. Judge Tyson, concurring in part and dissenting in part, would have affirmed the trial court's grant of summary judgment in light of the husband being deceased at the initiation of the lawsuit and the lack of evidence that the wife entered the agreement involuntarily. *Id.* at 31-32, 625 S.E.2d at 812-13. Our Supreme Court, in a *per curiam* opinion, adopted Judge Tyson's Dissent. *See Kornegay v. Robinson*, 360 N.C. 640, 637 S.E.2d 516 (2006).

Although the Dead Man's Statute was not directly mentioned in *Kornegay*, there are factual similarities that implicate the same concerns the Dead Man's Statute exists to protect against: "to exclude evidence of statements made by deceased persons, since those persons are not available to respond." *Estate of Redden ex rel. Morley*, 194 N.C. App. at 808, 670 S.E.2d at 588. In *Kornegay*, the wife contested the validity of a prenuptial agreement over fifteen years after it was signed, and only after the husband had passed away, making it impossible for him to respond. *Kornegay*, 176 N.C. App. at 31-32, 625 S.E.2d at 812.

Here, similar to the wife in *Kornegay*, Wife contested the validity of the Agreement signed thirty-seven years prior to the initiation of this lawsuit in 2015 and only brought suit after Husband had passed away. In order to support her argument that the Agreement is void *ab initio* and unenforceable, Wife would be required to testify to oral communications she had with Husband. Such oral communications, however, are barred by the Dead Man's Statute because Wife is an interested party and Husband is no longer able to respond. N.C.G.S. § 8C-1, Rule 601(c) (2019).

Moreover, as noted above, Wife's principal argument is the Agreement is not valid and enforceable due to Husband's alleged failure to disclose his financial status prior to the execution of the Agreement. In support of this argument, Wife relies on *Tiryakian*. *Tiryakian*, however, was distinguished in Judge Tyson's Dissent in *Kornegay*, and *Tiryakian* is also distinguishable here.

As stated in *Kornegay*, and unlike the facts before us, "*Tiryakian* addressed a prenuptial agreement within the context of an equitable distribution[,] [b]oth parties to the agreement were alive at the time of trial and [were able to testify] to the circumstances surrounding the execution of the premarital agreement[, and] was not before this Court on a ruling" for summary judgment. *Kornegay*, 176 N.C. App. at 31, 625 S.E.2d at 812 (Tyson, J., dissenting).

Like the spouses in *Kornegay*, Husband and Wife were both previously married and had children by those marriages. There is no evidence of inequality in education or business experience between Husband and Wife. Unlike the husband and wife in *Tiryakian*, and similar to the husband and wife in *Kornegay*, Husband passed away before Wife challenged the Agreement. Unlike the lack of an evidentiary bar in *Tiryakian*, here the only evidence Wife presented to demonstrate the alleged invalidity of the Agreement is barred by the Dead Man's Statute.

## C. Enforceability

Moreover, in terms of the validity of the Agreement, "[i]t is well-settled in this jurisdiction that a man and woman contemplating marriage may enter into a valid contract with respect to the property and property rights of each after the marriage, and such contracts will be enforced as written." *In re Estate of Tucci*, 94 N.C. App. 428, 432-33, 380 S.E.2d 782, 784-85 (1989) (quoting *In re Estate of Loftin*, 285 N.C. 717, 720-21, 208 S.E.2d 670, 673-74 (1974)); *see* N.C.G.S. § 52-10(a) (2019). "[Prenuptial] agreements are not against public policy, and if freely and intelligently and justly made, are considered in many circumstances as conducive to marital tranquility and the avoidance of . . . disputes concerning property." *Turner v. Turner*, 242 N.C. 533, 538, 89 S.E.2d 245, 248 (1955).

If we were to rule the Agreement unenforceable, we would "disregard . . . the sanctity of a solemn written agreement, probated before a notary public, promptly

recorded in the public land records of the county, and unchallenged for over [thirty-seven] years"; it would be a "wholesale disregard of the bargained for and settled expectations of parties of equal bargaining power in preference to wholly unsupported parol averments in direct contradiction to the terms of the written agreement." *Kornegay*, 176 N.C. App. at 32, 625 S.E.2d at 813 (Tyson, J., dissenting). As Judge Tyson notes in the *Kornegay* Dissent, "[n]o regard [would be] shown for [Husband and Wife's] clearly stated bargain, long after [Husband] is no longer able to explain or defend the circumstances surrounding the execution of the agreement." *Id.* Holding the Agreement unenforceable would "only cause great uncertainty into the finality and enforceability of an . . . agreement entered into lawfully." *Id.* Accordingly, here Executor's motion for summary judgment was properly granted.

Wife further argues that Executor's motion for summary judgment was not properly granted because the Agreement was "revoked" during Husband's lifetime:

> [Executor's] Counterclaim is barred in whole or in part because the document entitled "[Prenuptial] Agreement" was revoked by [Husband] during his lifetime.

> [Executor's] Counterclaim is barred in whole or in part by waiver, as [Husband] evidenced his intent to revoke and did revoke the document entitled "[Prenuptial] Agreement" during his lifetime.

> [Executor's] Counterclaim is barred in whole or in part by estoppel, as [Husband] evidenced his intent to revoke and did revoke the document entitled "[Prenuptial] Agreement" during his lifetime.

Wife is the only party who claims, in her pleadings, that the Agreement was revoked. Wife's son, from her first marriage, provided an affidavit to support Wife's pleading that the Agreement was revoked. Presuming, *arguendo*, that Wife's son's affidavit is admissible, it is irrelevant because Wife merely claimed the Agreement was revoked by Husband. One spouse "may not unilaterally cancel a valid marital contract[.]" *In re Estate of Tucci*, 94 N.C. App. at 433, 380 S.E.2d at 785. Wife's argument that the Agreement was revoked is of no legal significance.

## D. Statute of Limitations

Wife argues the Agreement is unenforceable on grounds it was signed under duress, was procured without financial disclosure, or is unconscionable. Absent admissible evidence the Agreement was void *ab initio*, the statute of limitations for each of these claims is three years. *See* N.C.G.S. § 1-52(1), (9) (2019). "The statutes of limitations contain no exception in favor of [one spouse] against [the other spouse]. . . . [The] statutes of limitation run as well between spouses as between strangers." *Fulp v. Fulp*, 264 N.C. 20, 26, 140 S.E.2d 708, 713 (1965) (internal quotation marks omitted). The Agreement was signed before a notary in 1978. The enforceability and validity of the Agreement was not brought into question until 2015, thirty-seven years after it was entered into and after any "alleged fraud" was discovered. *See Swartzberg v. Reserve Life Insurance Co.*, 252 N.C. 150, 156, 113 S.E.2d 270, 276-77 (1960) (holding that the statute of limitations in N.C.G.S. § 1-52(9) "appl[ies] to all

actions, both legal and equitable, where fraud is an element, and to all forms of fraud, including deception, imposition, duress, and undue influence").

Wife argues "the statute of limitations [did not begin] to run, if at all, [until] [Husband] died and [Wife] discovered that [Executor] sought to enforce the [Prenuptial] Agreement against her." However, we have held the "cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed." *Dawbarn v. Dawbarn*, 175 N.C. App. 712, 717, 625 S.E.2d 186, 190 (2006) (quoting *Davis v. Wrenn*, 121 N.C. App. 156, 158-59, 464 S.E.2d 708, 710 (1995)); *see also Baars v. Campbell Univ., Inc.*, 148 N.C. App. 408, 415-16, 558 S.E.2d 871, 876 (2002) (holding that the claim of undue influence accrued at the time the deed was executed and filed, which was four years and one month beyond the statute of limitations and was, therefore, time-barred). Thus, the claim in this case accrued at the time Husband and Wife signed and implemented the Agreement, which was thirty-seven years prior to the initiation of this lawsuit in 2015. Wife's argument that the Agreement is unenforceable and voidable is, accordingly, time-barred.

Both parties acknowledge the Agreement is not controlled by the Uniform Premarital Agreement Act ("UPAA"), N.C.G.S. §§ 52B-1-11. The UPAA "became effective on 1 July 1987 and is applicable to premarital agreements executed *on or after that date*." *Huntley v. Huntley*, 140 N.C. App. 749, 752, 538 S.E.2d 239, 241

(2000) (citing 1987 N.C. Sess. Laws ch. 473, § 3) (emphasis added). Here, the Agreement was signed in 1978 and therefore is not controlled by the UPAA. Accordingly, N.C.G.S. § 52B-9, which states "[a]ny statute of limitations applicable to an action asserting a claim for relief under a premarital agreement is tolled during the marriage of the parties to the agreement" is not applicable. N.C.G.S. § 52B-9 (2019). The statute of limitations is not tolled in this case. We hold the three-year statute of limitations applies and Executor's *Motion for Summary Judgment* was properly granted.

## CONCLUSION

Executor's *Motion for Summary Judgment* was properly granted and Wife's cross-motion for summary judgment was properly denied. The order and judgment appealed from is affirmed.

AFFIRMED.

Judges DILLON and TYSON concur.